This cause was tried before the honorable B. Mills, in the Fayette circuit court, who delivered the following opinion:
The plaintiffs set out a note made by the defendant in favor of John T. Mason, and by him assigned to Richard M. Johnson, and by Johnson assigned to the plaintiffs in their corporate capacity. Thus they shew their title to support their legal averment in the petition, that they have thereby become the proprietors thereof. The note on its face is made payable at their office of discount and deposit in Lexington. From this statement, taken as the record presents it, the plaintiffs have become the purchasers of the note in question, and the following questions have been made and debated at the bar: Are the plaintiffs allowed, *102 by their charter, to purchase the note? And if they are not, as they possess it, can they hold such property therein as will authorise this suit to recover the amount, and they remain subject to the penalties inflicted by the charter? Or, in other words, have they acquired a title which must remain unimpeached, it not being expressly declared void, while the only redress is an infliction of the penalty for a breach of the charter? The court will proceed to answer these queries.
It is a sound rule with respect to corporations created by statute, (and none in this country can be created in any other way) that they can only act in the manner prescribed by law. They are the mere creatures of the acts to which they owe their existence. They must be precisely what the incorporating acts make, and derive all their powers from these acts, and be incapable of exerting their functions in any other manner than the acts allow. This principle is strongly recognized by high authority. [See 2d Cranch, 127, Head and Armstrong against Prov. In. Co. 2d Johnson’s reports, 109, Beatty against Marine In. Co.]
Taking this rule for a guide, the court will proceed to examine the incorporating act of the United States’ bank. Its powers delegated and capacities granted in the 7th section are indeed ample. It is made “able and capable in law to have, purchase, receive, possess, enjoy, and retain lands, rents, tenements, hereditaments, goods, chattles and effects of whatsoever kind, nature and quality.” But these powers are in the close of the section made “subject to the rules, regulations, restrictions, limitations and provisions therein after prescribed and declared.” Of course, what follows must form the demarkation of power and capacity. If this section, with such an ample grant, was to have no restriction, the corporation, with such ample means, instead of being the hand-maid, would or might soon become the mistress of the sovereignty which created it. The debts payable in property of every embarrassed individual, might be procured at a fearful discount. Estates sold under execution, might soon be engrossed by the bank at large sacrifices and disposed of at large advances. The evils of such a corporation existing, may be more easily conceived than expressed.
The court, then, will take what follows as the true limits, of power. The seventh article of the eleventh section declares, that “the lands it shall hold are only such as shall *103 be requisite for its immediate accommodation in relation to the convenient transacting of its business, and such as shall be mortgaged to it by way of security, or conveyed in the satisfaction of debts previously contracted in the course of its dealings, or purchased at sales upon judgments which shall have been obtained for such debts.” If the bank should acquire lands in any other mode, or for any other purpose than this article allows, would its title be valid? The court presumes not. Consequently, among the articles adopted for its government, the court will look for its power and capacity to acquire or hold personal estate. Accordingly, in the 9th article of the same section, this emphatic restriction is found: “The said corporation shall not, directly or indirectly, deal or trade in any thing except bills of exchange, gold or silver bullion, or in the sale of goods really and truly pledged for money lent and not redeemed in due time, or goods which shall be the proceeds of its lands." Now, the note in question is not a bill of exchange, or indeed a quasi bill. Promisary notes, in this state, are made assignable, subject to the equity or defence attached to them in the hands of the original payees. Only those actually discounted by the bank of Kentucky, or other banks whose charters contain the same express provision, are placed on the footing of foreign bills of exchange. Their consideration and the consideration supposed to pass between each assignor and assignee, is contestible, and no person is estoped by the application of the law merchant to set up defence against the validity of the note or the endorsement thereof, as he would be in the case of a bill of exchange. The charter under consideration gives not the notes held by the corporation, the dignity of bills of exchange; of course they are subject to the law of the place where the contract is made. The note in question cannot come under the other denomination of chattels described in the article last recited, to wit: gold or silver bullion, or goods really and truly pledged for money lent and not redeemed in due time: for no pledge is alledged or pretended. On the contrary, absolute ownership is averred and relied on, of course the court concludes that the bank was not permitted to purchase the note in question. Nor will any construction put upon the words deal or trade authorise them to do so. Those words, it is true, means buying and selling these articles, and if the bank is prohibited from doing both, either must be included in the same prohibition, nor *104 will the concluding expressions, “for or upon its loans of discounts,” give the authority, for they are authorised to loan the articles which it is allowed to hold, and to issue bills of credit in another part of the charter: and as to its discounts, it is peculiarly applicable to bills of exchange, which it may lawfully buy and sell. Nor does the court suppose that the expressions inserted in the note in question, that it shall be payable and negotiable at the office of discount and deposit of the bank, authorise the purchase; for the bank, must derive its authority from the acts of its creation, and not from the grant of the defendant.
This conclusion, that the bank could not purchase the note, is somewhat fortified by the silence of the charter as to what kind of notes it can purchase or acquire, when a provision of that kind is found in the charter of the bank of Kentucky, and in most other acts of incorporation which authorise notes to be taken; the kinds of notes when payable, and how and where negotiable, must be expressed on the face of the note. But the act now under consideration describes not the kind of notes in which the bank may deal, of course, if it can purchase this one, it may purchase all notes afloat in society, whether for money or property, and the power, if it exists at all, is unrestricted. The same conclusion is however more forcibly strengthened by the 12th section, which enacts and declares “That if the said corporation or any person or persons for, or to the use of the same, shall deal or trade in buying or selling goods, wares, merchandize, or any commodity whatsoever, contrary to the provision of this act, all and every person and persons, by whom any order or direction for so dealing and trading shall have been given, and all and every person or persons who shall have been concerned as partners or agents therein, shall forfeit and loose treble the value of the goods, wares, merchandize, and commodities, in which such dealing and trade shall have been, &c.” If, therefore, the plaintiffs were not allowed to make the purchase of the note in question, yet as they have got it, are they allowed to hold it and coerce its collection, and be permitted to atone for the offence by paying the penalty, if it ever shall be inflicted? Or, in other words, when a positive law has declared that the act shall not be done, is the act good when the penalty is paid; and can a title, acquired contrary to the express direction of the law, be a valid one? The affirmative answer to these enquiries has been ingeniously and ably *105 supported by the counsel for the bank, and has the sanction of high authority on its side. The courts of Westminster hall seem, in some degree, astute in supporting actions originating in illegal transactions. It has been said by them, that where the illegal contract is executory, money paid upon it may be recovered back, aliter, if it be executed; and that when the contract is only malum prohibilum and not malum in se, it was a good consideration to support an action. Such are the principles of the cases Lowry vs. Bordieu, Doug. 470; Rapperdin vs. Randall, 2d Boss. and Pull. 467; Farkney vs. Reynolds, 4 Bur. 2069, 1 Bur. 545, Cro. Ja. 643; 1 Wilson, 229; 2 Bur. 1077, and some cases in Dernford and East, since the revolution. These cases even with regard to natural persons, whose interest they decide, are very questionable: but they are still more so with regard to a corporation, the artificial creature of its incorporating act, the limits of which it ought never to be permitted to transcend. For how an unlawful transaction should ever in any way become the legal basis of an action at law; or, in other words, that the law should ever, in any manner, lend its aid to enforce claims arising out of a violation of its own principles, is to this court unaccountable. To state the proposition, seems to refute it. It strikes the mind at once as contrary to reason and law. This court will rather at once lay down and maintain the broad principle, even with regard to natural persons, that what the law says shall not be done, shall not vest a title or receive any aid when it is done, and is discoverable on any existing or pending controversy; and that a title acquired against law, shall not be enforced by law, whatever atonement the offender may be able to make, by paying the forfeit annexed to the forbidden act. This principle has met with the sanction of many of the courts of the United States, and different states of high standing. (See Maybin vs. Caulin, 4 Dallas, 298; Hamidy vs. Eves, 3 Cranch, 242; Mitchell vs. Smith, 4 Dallas, 269; Duncanson vs. M’Clure, ibid. 308; and sundry cases in New York reports.) These cases, which may be consulted at leisure, will shew that the ground now assumed by this court wants not the sanction of authority and precedent, as well as the first principles of reason, even where natural persons with natural rights are concerned, and of course corporations, and especially those of a potent, extensive and monopolizing character, ought to be as strictly, if not more so, confined within the rules of *106 reason and good order, and circumscribed within the strict limits of delegated authority. Upon the whole, it seems to the court that the law arising on the demurrer, is for the defendant.
It is, therefore, considered by the court, that the plaintiffs take nothing by their bill, but for their false clamor be in mercy, &c. That the defendant go hence thereof, without day, and recover of the plaintiffs his costs, by him about his defence in this behalf expended.
[At this term, Mr. Wickliffe presented to the court a transcript of the record of which the foregoing opinion is a part, and moved the court for a supersedeas. After much consideration, the court overruled the motion. Hence it is to be inferred, they approved of the opinion of judge Mills.]