## LITTLE ROCK *v.* NATIONAL BANK.

A city issued its bonds, engraved with vignettes on bank-note paper, of various denominations, ranging from $1 to $100, and having the form and appearance of treasury notes of the United States or bank-bills, and it paid them out to its creditors for property sold, materials furnished, and labor performed. It received them for taxes and other dues, and to some extent reissued them. They formed a considerable portion of the circulating medium of the city and vicinity. Under the authority of a statute of the State empowering the city council of any city to issue bonds for the purpose of extending the time of paying its indebtedness, which it was unable to meet at maturity, the city passed an ordinance providing for the redemption of the bonds first described. A., the lawful holder of some of them, which had been issued to other parties in payment of valid claims against the city and were overdue, surrendered them to the city, and received in lieu of the amount due thereon bonds for which the ordinance provided, and a credit on the books of the city. The city failing to pay, A. brought suit against it. A recovery was resisted, on the ground that the bonds engraved on bank-note paper had been issued in violation of law, and that the surrender of them was not a valuable consideration for the bonds and the credit received by A. *Held,* that whether the original bonds were issued in violation of law or not, — a point which this court does not decide, — A. is entitled to recover.

ERROR to the Circuit Court of the United States for the Eastern District of Arkansas.

This was an action brought by the Merchants' National Bank of Little Rock, Ark., against the city of Little Rock. The first count of the complaint is upon a bond in the words and figures following : —

"No. 1.]          STATE OF ARKANSAS.          [$500.

" *Bond of the City of Little Rock.*

" Know all men by these presents, that the city of Little Rock, in the said State of Arkansas, acknowledges itself to owe and be indebted unto the Merchants' National Bank, or bearer, the sum of $500 in lawful money of the United States of America, which sum the said city promises to pay, for value received, at the office of the treasurer of said city of Little Rock, one year from the date hereof, together with interest thereon, at the rate of ten per cent per annum, until this bond shall be paid.

" This bond is issued under and in pursuance of the provisions of sect. 3298, c. 72, entitled ' Incorporations,' Gantt's Digest of the Statutes of Arkansas, and is for indebtedness of said city of Little Rock, incurred previous to the time of the passage of said act.

" In testimony whereof, the said city of Little Rock, by an ordinance of the council of said city, passed Aug. 15, 1873, has caused this bond to be issued and signed by the president of said council and attested by the clerk of said city, and to be sealed with his official seal.

" Dated at Little Rock, in the county of Pulaski, State of Arkansas, this ninth day of October, 1874.

" D. P. UPHAM, <i>President City Council.</i>

[SEAL.]          " C. M. BARNES, *City Clerk.*"

The bond bears the following indorsement : —

" *Little Rock* $100 *Ten per Cent City Bond.*

" AUDITOR'S OFFICE, STATE OF ARKANSAS.

" I hereby certify that this bond is registered in my office according to law, that it is regularly and lawfully issued, and that the signatures thereto are genuine.

" In testimony whereof, I have hereunto set my hand and affixed the seal of my office, at the city of Little Rock, this twenty-second day of October, A.D. 1874.

[SEAL.]          " J. R. BERRY, *Auditor of State.*"

There are one hundred and fifty-five counts of a similar nature describing other like bonds. There is also one count for the recovery of certain amounts, for which the bank had received credit on the books of the city, and which remained unpaid.

The section mentioned in the bond is as follows : —

" The city or town council of any city or town, for the purpose of extending the time of payment of any indebtedness heretofore incurred, and which from the limit of taxation such city or town is unable to pay at maturity, shall have the power to issue the bonds of such city or town, or borrow money, so as to change, but not increase, the indebtedness, in such amounts, not less than fifty dollars, and for such length of time, and at such rate of interest, not more than ten per cent per annum, as such city or town council may deem proper."

In August, 1867, the city provided for the issue and redemption of its bonds which were printed on bank-note paper, in the form and having the ordinary appearance of United States treasury notes, and were in denominations varying from $1 to $100, payable in one, two, three, five, eight, and ten years respectively, with eight per cent interest from maturity.

By issuing this currency the city obtained the means with which it proceeded to build a city hall and school-houses, grade streets and culverts, purchase cemeteries, improve public landings, provide fire equipments, pay interest to several railroad companies, and pay salaries of officers and agents.

The city received in payment of taxes and other dues the bills thus held by others, and to some extent reissued them when its occasions required. From time to time their value diminished, until it became merely nominal; but for a considerable period they formed the local circulating medium in the city and its vicinity in lieu of money.

In 1873, the city council adopted an ordinance "for the redemption of outstanding city bonds on bank-note paper."

The bank was the lawful holder for value of a large number of overdue bonds of that description, issued to other parties in payment of valid claims against the city. In accordance with the provisions of the ordinance, the bonds were surrendered to the council, by whom they were cancelled, and the bank received in lieu of the amount due thereon the bonds

on which this suit was brought.   The bank had also other similar bonds, which were surrendered and in like manner cancelled, but for which no new bonds were issued, the city acknowledging its indebtedness by giving the bank credit therefor on the books of the city.

The city, among other defences, pleaded that the bonds surrendered were issued in violation of the statute, and that the bonds given in lieu thereof, as well as the credit entered upon the city books, which form the ledger account, were without authority of law or valuable consideration.

The jury returned a verdict in favor of the bank for $38,640.40. The court rendered judgment therefor, with a provision that of that amount $28,512.16 should bear interest at ten per cent per annum.   The city sued out this writ of error.

The statutes of the State bearing upon the questions involved are set out in the opinion of the court.

*Mr. U. M. Rose* for the plaintiff in error.
*Mr. John McClure* and *Mr. T. D. W. Yonley, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

We do not perceive that there is any difference between the right to recover for the amount issued to the bank in bonds and for that credited on the books of the city.   If the debt was legally created, the holder had the right to recover the amount of the bills held by him.   If it derived a new validity from the surrender of an old debt of a disputed character, it is to be observed that all of the debt was equally given up.   New bonds were issued for a portion, but all of the debt was surrendered. It was the surrender of what was claimed to be a legal debt, and the creating a new obligation thereby, that is said to create the liability.   If a city has power to bind itself by substituting a new liability for a cancelled one, it may do so by any instrument of acknowledgment which affords sufficient evidence of a debt.   We are of opinion that the two classes of obligations are governed by the same rule.

The statutes of Arkansas upon the subject of notes issued for the purposes of currency are complicated and hard to be understood.

On the 25th of November, 1837, was passed the first act to

which we are referred, entitled " An Act to prevent the circulation of private notes in the State," prohibiting the circulation of all money or bank-notes by persons unauthorized by law, and of notes of a less denomination than five dollars.

On the 14th of February, 1838, was passed the act entitled " An Act to compel the payment of change tickets," which provided that the holder of any change ticket, bill, or small note should have the right to sue the issuer or indorser thereof before any justice of the peace, and recover the amount held by him, and providing that the act first above mentioned should take effect from the first day of March, 1838.

The effect of the two statutes would appear to be that the general circulation of private notes was prohibited by law, but the holder of notes thus illegally circulated was authorized to recover the amount from the party issuing or indorsing the same, and to have execution without appeal or delay.

On the 8th of January, 1855, was passed "An Act to restrain the circulation of change tickets," prohibiting the circulation by any person or persons of notes or bills of less denomination than five dollars, to pass as currency, whether first issued within this State or not, punishable by ·fine and imprisonment.

On the 8th of February, 1859, was passed " An Act to prevent the people from being defrauded with bank paper," and on the 18th of November, 1861, " An Act to repeal all State laws that prohibit the circulation of bank-bills of any denomination." The last act is in these words : " All acts or parts of acts prohibiting the circulation of bank-bills of any denomination or amount and fixing a penalty for such circulation be, and the same are hereby, repealed ; but nothing herein contained shall be construed so as to authorize the issuance of shin-plasters, change notes, or other irresponsible paper by individuals, corporations, or others."

" Shin-plasters and change notes " we may assume to be paper-money of a less denomination than one dollar, intended to take the place of small pieces of coin. But what is " other irresponsible paper " ?

It would seem that shin-plasters and change notes are irre-

sponsible paper, as not only are they expressly required not to exist, but they are condemned in the company of " other irresponsible paper."

Nor can we treat this subject as paper or notes issued by those who are not solvent in their pecuniary affairs, or not able to respond to the consequences of their actions.

There is no standard known to the law to determine where responsibility or irresponsibility exists.

We apprehend this expression may have been intended to apply to fractional paper, which in its form, character, and nature was considered as a debased and unhealthy circulating medium.

By an act approved Dec. 14, 1875, it was enacted " that all city warrants, scrip acceptances, or money shall be receivable for any city purposes except for interest tax, and for all debts due the municipal corporation, by whom the same were issued, without regard to the time or date of issuance of such warrant, scrip acceptance, or money, or the purpose for which they were issued."

Upon this state of the law the judge at the circuit was of the opinion that the original issue of its notes by the city of Little Rock was illegal. It is not necessary that we concur in this view, or that we should dissent from it. We have referred to the statutes that the actual position of the parties towards each other might be understood, and the point on which the decision in favor of the bank was made be appreciated.

There was evidence that the bonds sued on, and the ledger accounts sued on, were given and allowed on the immediate consideration of the surrender of bonds of the form, character, and material first issued by the city. The court charged as follows, viz. : —

" That the bonds in suit issued by the defendant in lieu of said bonds on bank-note paper — the last-named bonds having been originally issued under the circumstances above stated for valid debts against the city to other creditors of the city than the plaintiff, and the plaintiff not having been connected with their issue — constitute a valid ground of action against the city, and the city is liable thereon to the plaintiff, although the said city bonds on bank-note paper were of such an appear-

ance and of such a form as to be especially adapted to constitute a circulating medium, and were, in fact, used in and about the city as a local circulating medium in lieu of money.

" There is also a claim against the city for the amount of certain city bonds on bank-note paper surrendered by the plaintiff to the city at its request, for which the city issued no new bonds, but placed the amount of the bonds surrendered by the plaintiff and destroyed by the city to the credit of the plaintiff on the ledger of the city. The same principles of law apply to this claim as to the claim on the new bonds."

It can scarcely be doubted that whoever is capable of entering into an ordinary contract to obtain or receive the means with which to build houses or wharves or the like, may, as a general rule, bind himself by an admission of his obligation. The capacity to make contracts is at the basis of the liability. The first liability of the city was disputed by it. It had gone beyond its power, as it said, in making a debt in the form of bank-notes. If it had not denied its power, judgment and an execution might have gone against it, and the creditor would have obtained his money. This privilege of non-resistance every person retains, and continues to retain. He can reconsider at any time and confess, and admit what the moment before he denied.

In 1874, the city of Little Rock did reconsider. It said, we will purge the transaction of its illegality. We had the authority to accept from you in satisfaction of amounts received by us for legitimate purposes the sums in question. We did so receive and expend for legitimate purposes. We erred in making the payment to you in an objectionable form. We now pay our just and lawful debt by cancelling the bank-notes issued by us, and delivering to you obligations in the form of bonds, to which form there is no legal objection.

If the city had borrowed $1,000 of the bank upon its note at a usurious interest, but the bank had subsequently cancelled the illegal note, had refunded the excessive interest, and received a new note for a lawful amount, the new note would be valid and collectible. *Kent* v. *Walton*, 7 Wend. (N. Y.) 256. So where the consideration of a contract declared void by statute is morally good, a repeal of the statute will validate

the contract. *Washburn* v. *Franklin*, 35 Barb. (N. Y.) 599; s. c. 13 Abb. Pr. 140. If the act of Dec. 14, 1875 (*supra*), repealed the restraining laws absolutely as to cities, which we do not decide, the notes first issued by the city were valid from that time.

We think the charge as quoted was right. *Hitchcock* v. *Galveston*, 96 U. S. 341; *The Mayor* v. *Ray*, 19 Wall. 468; *Police Jury* v. *Britton*, 15 id. 566; *Mullarky* v. *Cedar Falls*, 19 Iowa, 24; *Sykes* v. *Laffery*, 27 Ark. 407; *Wright* v. *Hughes*, 13 Ind. 109, are authorities to the point. See also the numerous cases cited in Dillon, Mun. Corp., sect. 407, note.

*Judgment affirmed.*