## GAUSE *v.* CITY OF CLARKSVILLE.

*(Circuit Court, E. D. Missouri.* March 9, 1880.,

MUNICIPAL CORPORATION—VOID BONDS—APPLICATION OF MONEY.— Where a city without power to make negotiable obligations sells its void bonds, and, receiving the money therefor, applies it to its legitimate corporate uses, an action will lie to recover the money so received and applied.

SAME—ASSIGNMENT OF BONDS—ACTION BY ASSIGNEE.—The right to recover money so received is transferred by the transfer of the bonds, and can be enforced by the last holder of such bonds as the assignee thereof. *Wood* v. *Louisiana,* (MS.) U. S. Circuit Court, E. D. Missouri, September term, 1878, affirmed.

SAME—VOID BONDS—ACTION BY HOLDER.—Where a bond is made by a city for two considerations, as to one of which it has power to make a bond, but as to the other has none, such bond is wholly void. The holder cannot recover on the bond as such. His remedy is an action for money had and received.

VALID BOND SURRENDERED FOR VOID BOND—ACTION ON SURRENDERED BOND.—Where the holder of a valid bond presents it when due to the maker, and receives in payment a renewal bond, which for any reason is void, then the old bond, though surrendered for cancellation, is not extinguished, but recovery may be had on it the same as if the new bond had not been given.

CITY ORDINANCE—ISSUE OF BONDS—RECITAL—ESTOPPEL.—A city ordinance, authorizing a subscription to stock of a road company and issue of bonds to pay same, recited that the authority prescribed by the law as a prerequisite of such subscription had been given by an election held for the purpose. In a suit upon such bonds, *held,* that the city was estopped by such recital to show that the voters at such election were not duly sworn, and the election therefore void. Principle of estoppel by recitals in bonds applies to recitals in an ordinance authorizing the issue of bonds.

PLEA IN ABATEMENT—JURISDICTION—CAPACITY TO SUE.—All matters which go to challenge the jurisdiction of the court, or the capacity of the plaintiff to sue, should be presented by plea in abatement, in advance of hearing on the merits, unless the want of jurisdiction is put in issue by some pleading. Evidence tending to show cause is irrelevant and will not be heard.

Action upon 27 negotiable bonds of defendant, payable to bearer, of divers dates and amounts, and acquired by plaintiff after due. The amended petition contained 27 special counts based on said several bonds, respectively, together with two

v.1.no.6—23

common counts for money had and received, etc. The bonds described in counts 1 to 11, inclusive, were therein alleged, and by the evidence were shown, to have been given for money borrowed by defendant from the original payees, for the purpose either of building or improving its wharves or streets, or of paying for a city cemetery, and to have been actually used for those purposes.

Upon demurrer to like counts in the original petition all these bonds were held to be void, for want of an express grant of power in the charter of defendant to make bonds or borrow money.

The bonds described in counts 12 to 17, inclusive, were therein alleged to have been made either in direct payment of subscriptions made by defendant to stock of certain road companies, organized under the laws of Missouri to build gravel roads leading from the defendant city to o.her places in Missouri, by virtue of an act approved in 1857, (Sess. Acts Mo. 1857, p. 302,) or in renewal of other bonds originally so given in payment of such subscriptions. The evidence showed that the allegations as to all of these bonds were true, with the exception of those described in counts 12 and 13. As to these it appeared that while eight-tenths of their consideration was the payment or renewal of bonds so given in payment of road subscriptions, the remaining two-tenths was money borrowed from the holders of said bonds, and applied to the general uses of defendant.

As to the bond described in the fourteenth count, it also appeared that when due it was surrendered to defendant by its then holder in exchange for a new bond of like amount, and bearing a like rate of interest, but which was made on April 20, 1872, and had not been registered according to the law of Missouri passed March 30, 1872, which required all bonds issued after its passage to be registered. Sess. Acts 1872, p. 56, § 4. It also appeared that after the old bond had been surrendered it came again into possession of its holder at maturity, who transferred it to the plaintiff, who, at the trial, produced it, together with the void renewal bond, and offered to surrender the latter to defendant. The bonds de-

scribed in counts 18 to 27, inclusive, were alleged and shown to have been made in payment of a subscription by defendant to the stock of a company organized to build a gravel road from the ferry landing in Illinois, opposite to Clarksville, to other points in Illinois, under a law of Missouri authorizing such subscription upon condition that the assent of the citizens was first obtained by an election. Sess. Acts 1866, p. 254. It was also alleged that such assent was in fact obtained at an election held on October 2, 1866.

Defendant pleaded as a special defence that this election was not valid because the voters were not registered, but at the trial conceded that no registration law was in force at the time of the election, and then claimed and attempted to prove that the election was invalid because the voters were not sworn as required by section 5 of article 2 of the constitution of Missouri of 1865.

The evidence showed that the road company negotiated the bonds for value, before maturing, to sundry persons, by whom they were transferred to plaintiff; also, that the subscription was authorized by an ordinance passed by defendant's city council in January, 1867, in the preamble of which was the following recital, to-wit:

"Whereas, the legislature of Missouri, by an act approved March 12, 1866, so amended the charter of the city of Clarksville as to authorize the city council to take stock in roads leading to the city or to the ferry landing opposite to the city, in Illinois, by first obtaining the assent of two-thirds of the legal voters of the city thereto, and *whereas, at an especial election held for that purpose at the city hall on the second day of October, 1866, the authority was so given* * * * * * * to subscribe the sum of $15,000: * * * Now, therefore, be it ordained," etc., etc.

It also appeared that the bonds were issued in payment of the subscription only as the work on the road was finished, and that defendant received and voted the stock so subscribed, and still retained the same. Two of these bonds bore date April 1, 1872, two days after the passage of the act requiring registration of bonds, (Sess. Acts 1872, p. 56,) and

appeared never to have been registered as required by that act. At the trial, and after the cause had been heard upon its merits, defendant, without having in any way pleaded any want of jurisdiction in the court or of competency of plaintiff to sue, offered to show that all the bonds sued on were owned by residents of Missouri, and had been transferred by them to plaintiff, a resident of Texas, without value, and merely to have him sue thereon in the United States court, and to avoid suing thereon in the state courts. Plaintiff objected to such evidence as irrelevant, and the same was heard subject to such objection, the court reserving its decision as to its relevancy till the final determination of the case.

*Dryden & Dryden*, of counsel for plaintiff, cited the following authorities: 1 Peters, 450; Id. 498; 6 How. 4; Id. 23 and 30; 7 How. 198; 14 How. 505; 18 How. 76; 20 How. 264; 3 Sawyer, 599; 57 Mo. 86; 14 Mo. 428; 28 Mo. 597; 35 Mo. 461; 40 Mo. 67; Pomeroy on Rem. §§ 128–130; *Gauss* v. *Clarksville*, 8 Cent. L. J. 364; Dillon on Mun. Corp. § 730; 22 Mo. 266; 4 Dill. 208; 21 N. Y. 490; *Mayor* v. *Ray*, 19 Wall. 484; *Wood* v. *Louisiana*, (MS.) U. S. Circuit Court, E. D. Mo.; 1 Daniel Nego. Inst. §§ 201, 204; 2 Kent's Com. (side,) 467; Story on Bills, § 184; 14 Pick. 198; 16 Ohio St. (N. S.) 133; 15 N. Y. 96; 1 Wall. 221, 222; 10 Peters, 343; 2 W. & S. 235; 25 Ind. 31; 25 Ark. 350; 2 Daniel Nego. Inst. § 1274; 43 Vt. 319; 73 Pa. St. 400; 8 Cowen, 77; 2 Pars. N. & B. 205; 2 Bailey, 574; 19 Mo. 637; 33 Mo. 583; 24 How. 287; 99 U. S. 86; 92 U. S. 484; Id. 494.

*Wagner, Dyer & Emmons*, of counsel for defendant, cited the following authorities: 1 Kent's Com. 349; 2 Wagner's St. page 991, § 2, and page 1015, § 12; Myers' Supp. to Wag. St. page 304, § 12; *Aud* v. *Burrows*, 1 Otto, 426; *Ex parte McNiel*, 13 Wall. 243; Pom. Rem. pp. 155, 677, 707; *Thompson* v. *Railroad*, 6 Wall, 134; 1 Wagner's St., title, "Interest," § 1; *Southgate* v. *A. & P. R.* 61 Mo. 89; Story Prom. Notes, §§ 190, 191; *Andrews* v. *Pond*, 13 Pet. 65; *Fowler* v. *Brantley*, 14 Pet. 321; *Parsons* v. *Jackson*, 9 Otto, 441; *Mercer County* v. *Hackett.* 1 Wall. 83; *Van Hastro* v. *Madison*

*County,* Id. 291; *Hackett* v. *Ottawa,* 9 Otto, 86; *Town of Wey-auwega* v. *Ayling,* Id. 112; *Supervisors* v. *Galbraith,* Id. 214; *Brooklyn* v. *Ins. Co.* Id. 362; *Orteans* v. *Platt,* Id. 677.

TREAT, J.   Most of the legal propositions involved in this case were heretofore decided on the demurrers to some of the counts.   8 Am. Law Reg. 497.

In the case of *Wood* v. *The City of Louisiana,* recognized as correct by Judge Dillon in his opinion on said demurrers, it was held that although a municipality issued bonds which it had no authority to issue, and no recovery could be had on the bonds as such, yet if the money derived therefrom was received for an authorized purpose and applied to that purpose, an action would lie as for money had and received, and that the *bona fide* holder of said bonds could recover as assignee of the original demand.

This doctrine receives some support from the views expressed in the case of *Little Rock* v. *National Bank,* 98 U. S. Rep. 308, and *Shirk* v. *Pulaski County,* 4 Dill. 209.

Accepting the doctrines thus stated, it was for the plaintiff to prove what amount the city actually received for wharf and for street improvement bonds, respectively.   The evidence shows that these bonds sold at *par,* and that the proceeds thereof were paid into the city treasury, and expended for the specific purposes designated.   There were ordinances of the city authorizing said improvements, and making the needed appropriations therefor, all of which were lawful, and the money raised therefor by the sale of said bonds faithfully applied.   Hence, under the rulings heretofore made in this case, the plaintiff is entitled to recover the amounts so actually loaned, with unpaid interest due from date of demand, at the rate of 6 per cent.

The city bought a cemetary lot, to pay for which it borrowed $1,500, and issued a bond for $1,650.   As there was no power to issue a bond therefor, the recovery can be only for $1,500, with unpaid interest, at the rate of 6 per cent.

The foregoing items cover all the counts, from the first to the eleventh, inclusive, on which, as held, there can be no

recovery; but that the plaintiff would be remitted to his count for money had and received.

The demands embraced in counts from 12 to 17, inclusive, are on bonds issued in payment for subscription to gravel roads, held by Judge Dillon to be a lawful exercise of municipal authority, from which view I dissented. As his ruling must prevail, the only question open under this head is as to two of said bonds, which the evidence shows were issued on renewal, not for part payment of said subscription alone, but for an additional sum also, then borrowed for general uses of the city. It has been contended that said bonds, though invalid, *pro tanto,* as to the amount in excess of what pertained to said subscription, should be held valid as to the amount included therein for which the city had authority to issue negotiable securities. If this were so, a suit on a specialty would necessarily require an examination into the various items of the consideration therefor, and thus, instead of proceeding as' on a specialty, with the legal presumption arising therefrom, cause the single demand under one legal head to be split into an indefinite number of demands under various heads.

As to those two bonds of this last named series, therefore, the recovery must be had under the count for money had and received; while on the other bonds the recovery will be had as on specialties, according, to their tenor. The counts from 18 to 27, inclusive, are also on subscription bonds. To these bonds it is objected that the required assent of the voters was not obtained, because, though numerically the needed vote was given, yet the voters were not registered, nor did they take the oath prescribed by the state constitution of 1865. It was conceded, but if not, such is the fact, that the registration clause alluded to was not then in force. No doubt the prerequisite of the oath for qualification to vote was then in operation. Whether such oath was duly administered or not to each voter is doubtful, in the light of the testimony; and if not administered to all, how many voters failed to take it is still more uncertain. It seems that the vote was nearly unanimous in favor of the proposition; so

that, if the inquiry were to extend to each vote, it might appear that the required number of qualified voters did assent to the subscription.

The ascertainment of the precise facts in this regard is considered unimportant, inasmuch as the ordinance under which these bonds were issued recites that the needed election was duly had, etc. If a recital on the face of the bonds estops the municipality, as held in all similar cases on municipal bonds, the same rule should obtain when the recital is in the city ordinance; for the reason of the rule is the same in both instances.

Two of said bonds are dated after the registry act of the state was in force, and therefore are not valid, as bonds, on their face. An effort was made to show, by the evidence, that they were delivered before, and post-dated; but the court finds otherwise. Hence, the recovery on those two bonds must be as for money had and received. As to the fourteenth count the facts are, substantially, that the original bond was lawfully issued, and that the holder of said bond agreed to surrender the same and accept a renewal bond therefor. Said original bond was returned to the city, and what purported to be a renewal bond was issued in lieu thereof, but the latter bond was void, because the city failed to comply with the requirements of the then existing law. Hence, the original bond, being unsatisfied, remains a valid bond, on which a right of action can be maintained, such original bond being produced by plaintiff as the holder thereof.

There is a grave question of jurisdiction presented, relating to the plaintiff's interest in this suit. It seems that the bonds sued on, and the rights resulting from the assignment thereof, were transferred to the plaintiff, a citizen of Texas, for the purpose of having him sue thereon in a United States court— evidence concerning which was received, subject to the ruling of the court as to its admissibility under the issues. By the practice act of Missouri, as uniformly ruled, the holder of negotiable paper, to whom the same is transferred merely for the purpose of collection, can maintain an action thereon in his own name. But it is urged that if such transfer, or the

assignment of a demand, negotiable or non-negotiable, is for the purpose of having the same adjudicated in a United States court, there is a fraud on the jurisdiction of the latter court. Such a question should have been presented by a plea in abatement. This case furnishes an apt illustration. The time of counsel and court has been occupied for a long period on the merits of this controversy, when, if a plea in abatement had been interposed, a few hours might have sufficed for its determination. If the court, through issues made by pleas in abatement, or in bar, had ascertained that no jurisdiction exists, its judgment would be dismissed without passing on the merits. There are, however, no *issues* in this case under which evidence of the kind, to defeat the jurisdiction, can be received. There is no time at command to analyze the varied learning on the subject, and the decided cases to which the learned counsel have referred. A few are referred to in a note to this opinion. If practicable, a special finding would have been made as to each count; but this opinion will clearly show the conclusions reached and the grounds on which the decision rests.

NOTE.—*Conrad* v. *The Atlantic Ins. Co.* 1 Pet. 450; *De Wolf* v. *Raband,* 1 Pet. 476; *Sims* v. *Hundley,* 6 How. 1; *Bailey* v. *Dozier,* 6 How. 1; *Smith* v. *Kernschen,* 7 How. 198. This covers the whole ground on the jurisdictional question.

*Sheppard* v. *Graves,* 14 How. 505; *Jones* v. *League,* 18 How. 76. These cases discuss the question at great length, both as to pleadings and colorable assignments.

*Dred Scott* v. *Sandford,* 19 How. 393. This case seems to have held, though by a divided court, that, whether the want of jurisdiction appeared through a plea in abatement or in bar, the judgment of the court must be a dismissal, and not a judgment on the merits. In the case on trial there is no plea, either in abatament or in bar, under which the question can arise; or, in other words, there is no issue in which any evidence on the jurisdictional point could be admitted. Subsequently there was the case of *Spencer* v. *Lapsley,* 20 How. 264, in which no reference was made to the Dred Scott case, but in which it was held that pleas in abatement and in bar, at the same time, were irregular.

*Thompson* v. *Railroad Companies,* 6 Wall. 134, does not establish a different rule. That states proceedings in a court of equity—an old and familiar rule—and refers to the Ohio statute as to actions at law. In Missouri the real party in interest, or a trustee of an express trust, may sue.