**LICZNERSKI et al. v. UNITED STATES et al.**

No. 10053.

United States Court of Appeals Third Circuit.

Argued Jan. 5, 1950.

Filed March 15, 1950.

Writ of Certiorari Denied June 5, 1950.

See 70 S.Ct. 1009.

Leon Rosenfield, Philadelphia, Pa., for appellant.

Norman H. Abrahamson, Philadelphia, Pa., for appellees.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The facts in this case are set out fully in the opinions of the court below, 81 F.Supp. 837; 83 F.Supp. 453 and 85 F.Supp. 87, and we will repeat only those circumstances which we deem necessary for our decision.

Fannie J. Licznerski (Fannie) is the widow of John W. Licznerski (John), the insured soldier, and the mother and natural guardian of Arlene Janet Licznerski (Arlene), a minor and the only child of John and Fannie. John originally had designated Fannie as the beneficiary of the policy and Arlene as the contingent beneficiary. On May 29, 1944 he designated his mother, Helen Rickards (Rickards), as beneficiary and Arlene as contingent beneficiary.[1] John died on July 10, 1944, the policy being in force. On the day of John's death Section 616 [2] of the National Service Life In-

---

1. There was another designation of beneficiaries not pertinent here.

2. Section 616 of the Act, 54 Stat. 1014, 38 U.S.C.A. § 816, provided that: "The provisions of Public Law Numbered 262, Seventy-fourth Congress, approved August 12, 1935 (49 Stat. 607), and titles II and III of Public Law Numbered 844, Seventy-fourth Congress, approved June 29, 1936 (49 Stat. 2031), insofar as they are applicable, shall apply to the provisions of this part."

Section 3 of the Act of August 12, 1935, c. 510, 49 Stat. 609, Seventy-fourth Congress, 1st Sess., 38 U.S.C.A. § 454a, provided in pertinent part: "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after the receipt by the beneficiary. * * *"

surance Act of 1940 provided that payment of benefits under policies issued pursuant to the Act should not be assignable and that the beneficiary should be exempt from taxation, from the claims of creditors, and should not be liable to any attachment, levy or seizure under any legal or equitable process.

After John's death a dispute respecting his burial arose between Fannie and Rickards, which found its way into the Court of Common Pleas of Philadelphia County. Pursuant to a stipulation entered into in that court Rickards executed an assignment dated July 14, 1944, of her right to the proceeds of the insurance policy to Arlene.[3,4] Thereafter Rickards, Fannie and Arlene filed claims with the Veterans Administration claiming the benefits of the policy. After the occurrence of certain other incidents irrelevant here, Fannie, as mother and natural guardian of Arlene, and Fannie in her own right, brought suit against the United States pursuant to Section 617 of the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A.

§ 817. Thereafter the United States filed a counterclaim sounding in interpleader, asking the court below to determine who was entitled to the proceeds of the policy, no part of it having been paid. According to paragraph 12 of the Statement of the case [5] Fannie renounced and abandoned any claim to the proceeds of the policy in her own right and " * * * is now a party to this action only as the natural guardian of the child [Arlene]."

On August 1, 1946, more than two years after John's death, Section 616 of the Act was amended to provide that an assignment of a beneficiary's interest, the beneficiary having been designated by the insured, may be made by that beneficiary to certain designated members of the family group of the insured, including a child of the insured. The amendment also provided that such an assignment by a beneficiary should be effective only if the designated contingent beneficiary joins in the assignment.[6] 60 Stat. 788.

The issue presented by the instant appeal is a narrow one and must be resolved in

---

3. The assignment was as follows: "Know All Men By These Presents, that I, Helen Licznerski, also known as Helen Rickards, do hereby release, remise, assign and set over all my right, title and interest in and to a certain war risk policy of insurance wherein my son John W. Licznerski is the insured and since April 18, 1944, I have been named as beneficiary, being Policy No. 8408723, unto my granddaughter, Arlene Janet Licznerski, also the daughter of the said John W. Licznerski, or to her duly appointed guardian.

"This assignment of my interest in the said policy unto my said granddaughter aforesaid is in accordance with stipulation entered in the Court of Common Pleas No. 5 on a certain Bill in Equity which was heard on July 14, 1944, before the Honorable Vincent A. Carroll; and I do hereby further agree to sign any and all additional papers that may be required to effectuate this assignment in law, or that the Veterans Administration or the particular governmental agency in charge of the said policy of insurance may require.

"In Witness Whereof, I have hereunto set my hand and seal this fourteenth (14th) day of July, A.D. 1944."
　　/S/ "Mrs. Helen Rickards.　(Seal)"
　　/S/ "Helen Licznerski"

4. It will be noted that Arlene, the contingent beneficiary, did not join in the assignment executed by Rickards in her favor, nor did Fannie join in it on behalf of Arlene.

5. Submitted in lieu of a record to this court pursuant to Rule 76 of the Federal Rules of Civil Procedure, 28 U.S. C.A.
　　We are not told how this renunciation was effected by Fannie. In view of our disposition of the case, however, it is unnecessary to pass upon the validity of the renunciation.

6. The pertinent part of Section 13 of the Act of August 1, 1946, c. 728, 60 Stat. 788, 38 U.S.C.A. § 816, is as follows:
　　"That assignments of all or any part of the beneficiary's interest may be made by a designated beneficiary to a widow, widower, child, father, mother, grandfather, grandmother, brother, or sister of the insured, when the designated contingent beneficiary, if any, joins the beneficiary in the assignment, and if the assignment is delivered to the Veterans' Administration before any payments of the insurance shall have been made to the beneficiary."

favor of Rickards. The learned District Judge concluded that the change in the statute authorized Fannie to enforce the assignment of July 14, 1944 (see note 3 supra) executed by Rickards in favor of Arlene. He stated, 81 F.Supp. at page 840, "While the assignment to deceased's daughter in the instant case technically violated the blanket prohibition then in force, it is difficult to regard it as seriously injuring or nullifying the basic policy behind the statute. Therefore, while the argument that illegal transactions should be discouraged is a strong one, it does not seem to me to apply with customary vigor in the instant case." Fannie and Arlene also urge specifically here that the document of July 14, 1944 was not an assignment but possessed the nature of a "release" or "renunciation". This attempted distinction is a tenuous one and was not adopted by the court below but even if the instrument which Rickards executed be held to be a release or a renunciation we deem it to fall within the statutory ban.

The assignment was unenforceable when made since it was prohibited by Section 616 of the Act. It was illegal and void as contrary to the public policy expressly declared by Congress. Cf. Ewert v. Bluejacket, 259 U.S. 129, 42 S.Ct. 442, 66 L.Ed. 858. See also Hannay v. Eve, 3 Cranch 242, 7 U.S. 242, 246–247, 2 L.Ed. 427. We, of course must be governed by the federal law and decisions but it should be noted that the weight of general authority also sustains the view that where an agreement is entered into in violation of a statutory provision, or a public policy, the subsequent repeal of the provision or a change of policy, cannot make the agreement valid since such a repeal cannot restore validity to an agreement which never had "a legal existence". See text and cases cited in 126 A.L.R. 685 et seq. The court below regarded the violation of the statute as a technical violation only and did not regard it as "seriously injuring or nullifying the basic policy behind the statute". This seems to imply a distinction between acts *mala in se* and acts *mala prohibita* but such a view is contrary to the weight of authority; and indeed is almost universally frowned on by the decisions.[7]

The correct rule is well expressed in the Restatement, Contracts, § 609, "A bargain that is illegal when formed does not become legal (a) by reason of a change of fact, except where both parties when the bargain was made neither knew nor had reason to know the facts making it illegal, or (b) by reason of a change of law, except where the Legislature manifests an intention to validate the bargain." The Comment to the section is as follows: "a. There are only the slight exceptions stated in the Section to be the broad rule that a bargain illegal when made is always illegal." Cf. Id. § 598 and Comments thereto. Williston on Contracts, Rev.Ed. § 1758, pp. 4992–4993, put the matter succinctly, stating: " * * * if a bargain originally illegal still remains executory, a subsequent change in the law, permitting such contracts to be made, will not ordinarily justify recovery." See authorities cited in note 2 to the text.

It is clear that though Congress effected a change in the law it did not manifest an intention to validate an assignment made by a beneficiary prior to the amendment of August 1, 1946. Congress could have made the provisions of the Act of August 1, 1946 retroactive. It did not do so. In this connection it is interesting to observe that Section 402 of the earlier War Risk Insurance Act, under which insurance policies were issued to service men and women in World War I, Act of October 6, 1917, c. 105, 40 Stat. 409, was amended by Section 13 of the Act of December 24, 1919, c. 16, 41 Stat. 375–376, to include within the class of permitted beneficiaries persons not included therein prior to the amendment. But Section 13 of the amending act specifically provided: "This section shall be deemed to be in effect as of October 6, 1917 * * *", the date of the original enactment. Under the amendment recovery was permitted by beneficiaries not within the class originally designated. See Helmholz v. Horst, 6 Cir.,

7. See 12 Am.Jur., Contracts, § 159, p. 655.

1924, 294 F. 417, 419 and White v. United States, D.C.E.D.Va. 1924, 299 F. 855. The absence of any similar provision in the Act of August 1, 1946 is a clear indication that Congress did not intend to validate void bargains.

The appellees insist that such decisions as City of Little Rock v. Merchants National Bank, of Little Rock, 98 U.S. 308, 314–315, 25 L.Ed. 108 and Ewell v. Daggs, 108 U.S. 143, 150–151, 2 S.Ct. 408, 27 L.Ed. 682, indicate the contrary result. The first case cited is *sui generis* in that the City of Little Rock issued bonds engraved on banknote paper which were like treasury notes of the United States and these seemed to have passed into general circulation. Thereafter the City repented of its acts and substituted bonds in proper form. A holder of the new bonds brought suit against the City to recover the amount due on them and recovery was resisted on the ground that the original bonds had been issued in violation of law. The Supreme Court specifically did not decide whether or not the bonds originally issued were in violation of law and held simply that the holder was entitled to recover on the substituted bonds. The appellees gain nothing by this decision. The second decision cited in which recovery was allowed was a usury case which, as we pointed out in Fitzsimons v. Eagle Brewing Co., 3 Cir., 107 F.2d 712, 714, 126 A.L.R. 681, seem to fall outside the general rule as do cases where suit is brought for the recovery of the selling price of liquor after the repeal of the sumptuary statute. See 33 C.J. p. 665, 48 C.J.S., Intoxicating Liquors, 8495, page 747. We believe the law to be correctly stated in the Fitzsimons case and little need be added to what was said there.

The appellees insist that the assignment of July 14, 1944, since it contains the provision that Rickards should "sign any and all additional papers that may be required to effectuate" the assignment required the court below to proceed under the equity maxim and to treat as done that which ought to be done, thus compelling its decision in favor of the appellees. But if the assignment is void and unenforceable for the reasons stated, the undertaking by Rickards to execute additional papers to effect the assignment is void and unenforceable also.

The judgment of the court below will be reversed and the case will be remanded with the direction to enter judgment in accordance with this opinion.