NORBERT BEAUREGARD *v.* ORLEANS TRUST CO.

October Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed January 7, 1936.

*E. J. Smith* for the defendant.

*Raymond L. Miles* for the plaintiff.

THOMPSON, J. This is an action of contract in which the plaintiff seeks to recover the sum of $95.57 which he alleges was unlawfully deducted by the defendant from five checks which were his property and which it now unlawfully retains. There was a trial by jury and a verdict and judgment for the plaintiff. The defendant excepted.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved for a directed verdict in its favor. Both motions were denied and the defendant was allowed an exception to the denial of each motion. The defendant waived its exception to the denial of its first motion by proceeding with the trial and introducing evidence, so we consider only its exception to the denial of its motion for a directed verdict made at the close of all the evidence. The substance of the grounds of that motion is that there is no evidence in the case that tends to show a contractual relation, express or implied, between the parties.

The evidence, viewed in the light most favorable to the plaintiff, as we must view it, tends to show the following facts: At no time material here was the plaintiff indebted to the defendant. In 1932, J. N. Beauregard, the father of the plaintiff, owned two farms in Orleans County, one in the town of Derby on which he lived, and the other in the town of Charleston on which were twenty-five cows owned by him. Both farms and the cows and personal property on the Charleston farm were

mortgaged to the defendant to secure the indebtedness of J. N. Beauregard to it. The dairy product from the two farms was sold by him to Seven Oaks Dairy Company, a dealer in milk products. There was an arrangement between him, the dairy company, and the defendant whereby all of his checks for dairy product sold to the dairy company were sent to the defendant, and there was an arrangement between him and the defendant whereby one-half of the proceeds of his checks was paid to him and the other half was applied by the defendant on his indebtedness to it.

In the fall of 1932, the plaintiff, under an arrangement with his father, the terms of which do not appear, moved on to the Charleston farm and carried it on until about the middle of February, 1934, when he moved off the farm. In February, 1933, the cows of J. N. Beauregard were taken away from the Charleston farm. In the spring of 1933, the plaintiff purchased twenty cows and placed them on the Charleston farm. Thereafter all dairy product from that farm was produced by the cows he had purchased and placed upon it, and he carried that farm on in his own name. All of his dairy product was sold to Seven Oaks Dairy Company.

At some time after he placed his cows on the Charleston farm, the plaintiff made an arrangement with his father whereby his checks for dairy product sold by him to the dairy company were to be sent to the defendant, and one-half of the proceeds of the same was to be applied by it on the indebtedness of J. N. Beauregard to it.

J. N. Beauregard was not a witness in the trial below. The plaintiff testified that he knew the terms of the arrangement between the defendant and J. N. Beauregard as to the checks of the latter. He testified that its terms were that from May 1 to December 1 of each year J. N. Beauregard was to receive one-half of the proceeds of his checks for dairy product, and the other half was to be applied by the defendant on his indebtedness to it, that from December 1 of each year to May 1 of the following year he was to receive all the proceeds of such checks, and during that time nothing was to be applied on his indebtedness. The defendant denied that the arrangement was as testified to by the plaintiff. It claimed, and its evidence tended to show, that under the arrangement with J. N. Beauregard it

had the right to apply one-half of the proceeds of his checks on his indebtedness at any time.

It appears that on or about the following dates the defendant received checks from the dairy company which were for farm product sold to it by the plaintiff:

| | | | |
|---|---|---|---|
| December | 15, 1933 | | $25.67 |
| December | 30, 1933 | | 30.79 |
| January | 15, 1934 | | 26.80 |
| January | 30, 1934 | | 32.46 |
| February | 15, 1934 | | 21.44 |

The defendant applied one-half of the proceeds of the first three checks and all of the proceeds of the last two checks on the indebtedness of J. N. Beauregard to it.

The plaintiff contended at the trial below, and he contends here, that one-half of the proceeds of his checks were paid to the defendant to apply on his father's indebtedness "in accordance with the same arrangement with regard to dairy produce checks which his father had. In other words, he paid one-half of his checks to the Orleans Trust Company on his father's indebtedness just exactly as his father was supposed to do with his own checks up to December 1." He contends further that as the defendant had no right to deduct anything from the checks of J. N. Beauregard between December 1, 1933, and May 1, 1934, consequently it had no legal right to deduct anything from his checks during that period; that the act of the defendant in deducting $95.57 from his checks and applying that sum on the indebtedness of J. N. Beauregard was without lawful authority, and it amounted to an unlawful conversion of so much of the proceeds of such checks, and that sum can be recovered in this action on the ground of a *quasi* contract.

■■ It is not claimed by the plaintiff that there is an express promise in this case nor an implied promise in fact, so, if liability exists, it must be by virtue of a *quasi* contract. In such so-called contracts the law creates a fictitious promise for the purpose of allowing the remedy by action of assumpsit. Though created by law and clothed with the semblance of a contract the obligation is not contract at all. In such contracts the law infers the promise without reference to the intention of the party and often against his express dissent, when he is under

legal obligation paramount to his will, to perform some duty. Liability exists from implication of law arising from facts and circumstances independent of agreement or presumed intention, based on the doctrine that one shall not be allowed to enrich himself unjustly at the expense of another, the implied agreement being one defining the duty of the defendant rather than his intention. *Mathie* v. *Hancock,* 78 Vt. 414, 417, 63 Atl. 143; *Morse* v. *Kenney,* 87 Vt. 445, 447-449, 89 Atl. 865. In *State* v. *St. Johnsbury,* 59 Vt. 332, 337, 10 Atl. 531, 533, the correct principle was stated by Rowell, J., in the following language: "But in order to maintain this action there need be no privity between the parties nor any promise to pay, other than what arises and is implied from the fact that the defendant has money in his hands belonging to the plaintiff that he has no right conscientiously to retain. In such case the equitable principle on which the action is founded implies the promise. When the fact is found that the defendant has the plaintiff's money, if he can show neither legal nor equitable ground for keeping it, the law creates the privity and promise."

It appears from the testimony of the plaintiff that the defendant was not a party in the arrangement between him and J. N. in respect to the use to be made of his checks, and that he never had any arrangement or contract with the defendant about his checks which it received. He knew that his checks were going to the defendant, but he did not know what the arrangement was between J. N. Beauregard and the defendant in respect to his checks. He left that matter entirely with his father. It appears from the account of the defendant with J. N. Beauregard, which was introduced in evidence by the plaintiff, that all of the checks of the plaintiff received by it were credited to J. N. Beauregard on that account by the defendant, and that both the defendant and J. N. Beauregard treated such checks as the property of the latter. That J. N. Beauregard had the authority and power to treat such checks as his property appears from the testimony of the plaintiff, and it appears from the facts and circumstances in the case that the defendant was justified in believing that the checks were the property of J. N. Beauregard and in treating them as such.

As hereinbefore stated, the plaintiff's evidence tended to show that under the terms of the agreement of the defendant and J. N. Beauregard as to his checks for dairy product received by it, he was to receive all the proceeds of such checks from December 1 of each year to May 1 of the following year, and during that time nothing was to be applied on his indebtedness to the defendant. The defendant denied that such was the agreement, and its evidence tended to show that under its agreement with J. N. Beauregard it had the right to apply one-half of the proceeds of his checks on his indebtedness to it at any time. This presented a question of fact for the jury. Whatever the terms of that agreement were, they applied with equal force to the checks of the plaintiff which were received by the defendant as both the defendant and J. N. Beauregard treated such checks as the property of the latter.

The $95.57, which the defendant applied on the indebtedness of J. N. Beauregard, and which the plaintiff seeks to recover, were proceeds of checks of the plaintiff which were received by the defendant between December 15, 1933, and February 15, 1934.

J. N. Beauregard had the power to authorize the defendant to apply the $95.57 in question on his indebtedness to it, but there is no evidence in the case that he did in fact authorize the defendant to apply that sum on his indebtedness, and, as against the judgment below, we cannot presume that he gave the defendant that authority.

Viewing the evidence in the light most favorable to the plaintiff, as it must be viewed, the jury would have been justified in finding that the $95.57 which the defendant applied on the indebtedness of J. N. Beauregard was in fact the money of the plaintiff; that it applied the same on his indebtedness without authority from him or the plaintiff to make such application; and that the defendant had shown neither legal nor equitable ground for keeping the plaintiff's money. The evidence presented questions of fact for the jury. If it found that the defendant applied the $95.57 on the indebtedness of J. N. Beauregard without authority from him or the plaintiff, the plaintiff can, on the authority of the cases to which we have referred, recover the same in this action on the ground of a

*quasi* contract. The court did not err in denying the defendant's motion for a directed verdict.

The defendant excepted to that part of the charge wherein the court said:

> "If * * * you find that the plaintiff made known to the defendant that he was paying for his father and that the defendant knew this and agreed to it, and that the agreement was that no money was to be taken from the checks from December to May in any year, or that the plaintiff demanded the money from defendant with defendant having this knowledge, then the plaintiff can recover."

█ There is harmful error here. There is no evidence in the case of any agreement by the plaintiff and the defendant in regard to his checks which were received by it. In fact, the evidence is all the other way. This part of the charge permitted the jury to find a contract by the plaintiff and the defendant which never existed, and to base a verdict thereon for the plaintiff.

*Judgment reversed, and cause remanded.*