## FITZSIMONS v. EAGLE BREWING CO.
### No. 7067.

Circuit Court of Appeals, Third Circuit.

Nov. 24, 1939.

Linn H. Schantz, of Allentown, Pa., for appellant.

Julius M. Rapoport, of Allentown, Pa., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The facts of the case at bar are reminiscent. The plaintiff-appellant, a Baltimorean, operating as the Camden Products Company (New Jersey), manufactured malt syrup, a primary ingredient in the brewing of beer. The defendant-appellee, a brewery, for reasons undisclosed by the record but easily conjecturable by United States Judges, lost its permit for the manufacture of near beer, the then legal kind, 27 U.S.C.A. §§ 4, 58; R. 45. Nothing daunted, it continued the purchase of plaintiff's malt and in those purchases enjoyed the enthusiastic co-operation of the plaintiff seller. In other words and in plainer English, the plaintiff sold malt

syrup in large quantities to a wildcat brewery and is now squealing because the learned trial judge had more regard for the public interest than it had. We say the judge because the defense of illegality was not interposed by a welsher but, as was not only proper but necessary, by the court sua sponte. The cases are collected in the West Digest System, Contracts, ☞107, 108; 5 Williston on Contracts, sec. 1630A.

The judicial opposition to the "stipulation for iniquity", as the ancient cases put it, is contemporaneous with the law of contract itself. Thus the Institutes of Justinian provide:

"A promise for some base end, as to kill a man or to commit sacrilege, is not valid". Institutes of Justinian, 3rd book, 19th title, 24th section.

"No mandate is binding that is contrary to good morals, as when Titius gives you a mandate to steal, to do harm, or to injure any one. For although you undergo punishment on account of that very deed, yet against Titius you have no action". Institutes of Justinian, 3rd book, 26th title, 7th section; Institutes of Gaius, 3rd book, 157th section.

The rule has two aspects—one theoretical and the other practical. 6 R.C.L. sec. 98; 2 Restatement of Contracts, sec. 598, p. 1110. The law helps the good and hinders the bad and not vice versa; at least that is the general idea. The comment to section 598 of 2 Restatement of Contracts puts it thus:

" * * * the rule of public policy that forbids an action for damages for breach of such an agreement is not based on the impropriety of compelling the defendant to pay the damages. That in itself would generally be a desirable thing. When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief. Courts do not wish to aid a man who founds his cause of action upon his own immoral or illegal act. If from the plaintiff's own statement or otherwise it appears that the bargain forming the basis of the action is opposed to public policy or transgresses statutory prohibitions, the courts ordinarily give him no assistance. The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff". 2 Restatement of Contracts sec. 598, p. 1110.

This particular high-minded attitude has a mundane result, something that does not always follow. It discourages such transactions, Hope v. Linden Park Blood Horse Ass'n, 58 N.J.L. 627, 34 A. 1070, 55 Am.St.Rep. 614, and reduces them to a minimum, Hoffman v. McMullen, 9 Cir., 83 F. 372, 45 L.R.A. 410; Standard Lumber Co. v. Butler Ice Co., 3 Cir., 146 F. 359, 7 L.R.A.,N.S., 467; 2 Restatement of Contracts, sec. 598(b), p. 1110.

The principal case gives us the easiest example of an illegal contract. We are not troubled with a violation of the sometimes vague rules of the common law, 13 C.J. p. 468, or even vaguer and more varying tenets of morals, 15 Amer. & Eng. Ency. of Law (2nd Ed.) p. 959, or public policy, 13 C.J. p. 424; 15 Amer. & Eng. Ency. of Law (2nd Ed.) p. 983. Our contract cannot be performed without the violation of an express statute, 27 U.S.C.A. § 13. That statute contains an express prohibition and does not merely impose a penalty. We are not concerned then with some confusion evinced by the courts re that type of statutes. 13 C.J. p. 421; 12 Amer.Jur. sec. 161. As the interest of the state and not the quality of the act is important, questions of mala in se and mala prohibita, moral turpitude, etc., are irrelevant and have been so declared by the great weight of authority. 12 Amer.Jur. sec. 159. See also, Moral Turpitude and the Eighteenth Amendment, 17 Iowa Law Review 76. As the law is Federal, we also escape any complexities of the conflict of laws. 1 Beale, The Conflict of Laws, sec. 2.3, p. 17.

All this is just about conceded. What is not conceded is a question of timing. As there is a conflict of laws as to place, so there may be a conflict of laws as to time. As Professor Williston puts it: "It may sometimes happen that a bargain is illegal when it is made either because of the illegal purpose of the parties to it or for other reasons, and that when the bargain is performed the transaction has become lawful either because the purpose of the parties has changed or because changes in the law or other external circumstances have made that lawful which was previously unlawful". 6 Williston on Contracts, sec. 1758, p. 4992.

The appellant urges that the validity of the agreement does not depend upon the law at the time it was made. In so doing, he runs counter to the overwhelming weight of authority. 6 Williston on Contracts, sec. 1758, above cited, 12 Amer.

Jur. sec. 165; 15 Amer. & Eng.Ency. of Law (2nd Ed.) p. 942; 2 Restatement of Contracts, sec. 609, p. 1128. The cases cited in support of these texts hold that the subsequent repeal of a prohibitive statute does not authorize recovery under the contract originally forbidden.

We cannot understand any other view. By definition your purpose is to discourage action deemed harmful. You are not interested in the consequences of acts but in the mental processes of the actor. Those processes precede both the acts and a fortiori their consequences and the relevant state of law is that existing at the time of the processes and not at the time of ·the consequences. The law breaking mens rea has reference to the time of contemplated breach. The medicine tastes nasty when it is swallowed.

The decisions disclose several exceptions to this general rule. 6 Williston on Contracts, sec. 1758. Of the two most pertinent, one is studied, the other fortuitous. For the first, usury (now supported by weight of authority, 2 Restatement of Contracts, sec. 609(b); 6 Williston on Contracts, sec. 1683, pp. 4762-3; 87 A.L.R. 462, note; Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682; but see contra Grossman v. Calonia Land, etc. Co., 103 N.J.L. 98, 134 A. 740, there seems to be an adequate explanation. A commercial civilization can neither understand nor readily act upon the now discarded theological considerations which gave rise to the legal concept of usury. Knight, Interest, 8 Ency. of the Social Sciences, p. 131. As a consequence, the courts have not in recent times looked askance at indirect means of excusing it. 6 Williston on Contracts, sec. 1683. Furthermore, legislators generally seek to prevent the real or supposed evils of excessive interest by proscribing its recovery rather than its exaction. The mental process leading to the act, recovery, and its consequence, the defense of illegality, are substantially contemporaneous. Thus the relevant state of the law is the same for all, and our problem does not arise.

A striking parallel to the usury cases exists in our particular field. 33 C.J. p. 665. When recovery of the selling price of liquor is prohibited by statute, it is allowed after repeal. See Gorsuth v. Butterfield, 2 Wis. 237. But where, as here, the sale of liquor is the offense (punishable, we may add, by fine or imprisonment) the decisions are almost unanimous in preventing, despite repeal, the effectuation of that sale. Gorsuth v. Butterfield, above cited, Hathaway v. Moran, 44 Me. 67; Ludlow v. Hardy, 38 Mich. 690. We say almost, because of the fortuitous exception we have referred to. Two adjudications purport to sanction the enforcement of a liquor sale after the repeal of National Prohibition by the 21st Amendment, U.S.C.A. Const. One, Lido Capital Corporation v. Vogel, 161 Misc. 48, 291 N. Y.S. 92, comes from a triply (Municipal Court), the other, Lido Capital Corporation v. Eskelsen, 162 Misc. 323, 295 N.Y. S. 163, from a doubly (Supreme Court) inferior tribunal. Both misconceive, we think, the rationale of United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510. They confuse a constitutional question of criminal jurisdiction (power) with a legal question of inherent civil jurisdiction (policy). For the rest, we are in agreement with the commentator writing in the University of Pennsylvania Law Review:

"Recognizing the existence of a divergency of judicial attitudes on the question of whether an agreement, illegal at its inception, is rendered enforceable by a legislative enactment legalizing the formation of such agreements, the instant court purported both to apply firmly established New York law and also to follow the Restatement. As a matter of fact, it did neither; for there are conflicting New York decisions and the Restatement positively advocates a contrary ruling". 85 University of Pennsylvania Law Review 535, 536.

See also, 14 New York University Law Quarterly Review 536 (note), 6 Brooklyn Law Review 770 (note), and compare 50 Harvard Law Review 834 (note).

In conclusion, we observe, that despite the presence of more than the usual amount of perjury (as the learned trial judge noticed, R. 44), plaintiff-appellant has failed to place itself in any position other than "in pari delicto". See 5 Williston on Contracts sec. 1631; 2 Restatement of Contracts, above cited, secs. 598, comment (b), 559, 602, and 604.

The judgment of the District Court is affirmed.