Glenn J. WILLIAMS, Plaintiff,

v.

J. W. WILSON, Defendant.

No. LR 3512.

United States District Court
E. D. Arkansas, W. D.

March 11, 1960.

Jack Holt, Jr., Little Rock, Ark., for plaintiff.

Warren E. Wood, Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

This is a suit on a promissory note brought by the plaintiff, a citizen of Tennessee, against the defendant, a citizen of Texas. The action, commenced in the Circuit Court of Grant County, Arkansas, was duly removed to this Court, where it was tried without a jury. This memorandum incorporates the Court's findings of fact and conclusions of law.

The note in suit dated July 10, 1957, was given by the defendant to the plaintiff in part payment of the purchase price of the plaintiff's interest in a partnership which had existed between the parties from about October 1956 to June 1957. The partnership had been engaged in the manufacture and sale of parquet wood flooring at Sheridan, Arkansas. In the manufacturing process the partnership employed certain trade secrets which the plaintiff had wrongfully appropriated from his former employer, the Harris Manufacturing Company, a Tennessee concern, hereinafter called Harris.

In March 1956 Harris was engaged in the business of manufacturing parquet flooring. In its manufacturing operation it used certain secret formulas and processes and certain special machines, all of which constituted trade secrets.[1] Williams, plaintiff here, was a trusted employee of Harris, and by virtue of his employment he was thoroughly familiar with its operations, secret processes, and machinery.

In the early part of 1956 defendant was engaged in the building material business at Dallas, Texas. In March 1956 he obtained a dealership from Harris covering the Dallas area, and while visiting the Harris plant in Tennessee he became acquainted with plaintiff. Defendant knew that Harris was employing a secret process, and he also knew that plaintiff was familiar with that process.

---

[1.] For a full description of the Harris operation see the opinion of Judge John E. Miller in Harris Manufacturing Co. v. Williams, D.C.Ark., 157 F.Supp. 779. See also his later opinion in the same case reported in D.C., 164 F.Supp. 626.

At some time after March 1956, defendant conceived and carried out the idea of inducing plaintiff to leave Harris' employ and to join in the formation of a partnership to manufacture parquet flooring in competition with Harris. In essence the agreement provided that defendant was to finance the operation, and plaintiff was to supply the technical knowledge and skill necessary to produce the product which the parties planned to market.

In fact, plaintiff's contribution to the partnership involved his wrongful appropriation of the Harris process and a copying of the Harris machines. From the circumstances of the case and from the defendant's own testimony it is clear that the defendant either had actual knowledge or at least was on notice that the Harris process had been wrongfully appropriated by the plaintiff and that the Harris machines had been copied.

In June 1957 the parties decided to dissolve the partnership and that the defendant was to acquire the plaintiff's interest therein. Although there can be no doubt that defendant knew that the partnership was employing a secret process, the nature of that process apparently had not been disclosed to him by plaintiff, and it was a part of the agreement for dissolution that plaintiff would make a full disclosure of the process to defendant so that he could continue operating. It was also agreed that after the dissolution the plaintiff would not go into business in competition with the defendant west of the Mississippi River. As consideration for his interest in the partnership, for his disclosure of the secret process, and for his covenant to refrain from competing with defendant, plaintiff was to receive the sum of $18,050. Of this sum $5,050 was paid in cash. The balance of $13,000 was evidenced by defendant's note dated July 10, 1957, payable with interest at 5 per cent in monthly installments of $1,000 each, beginning in August 1957. The agreement for dissolution was reduced to writing and signed on an unspecified date in July 1957.

In the meantime, Harris had discovered what was going on and on July 3, 1957, it filed suit against both Williams and Wilson and against the partnership in the United States District Court for the Hot Springs Division of the Western District of Arkansas for the purpose of enjoining further use of the Harris process and machines, for an accounting, and for both compensatory and punitive damages.

That both Williams and Wilson knew of the pendency of the Harris suit when the latter gave his note to the former is conclusively shown by the fact that on that date the parties entered into a supplemental agreement whereby they undertook to share equally in the expenses of defending the Harris suit.[2]

After dissolution the partnership was succeeded by an Arkansas corporation of the same name, Arkansas Parquet Flooring Company. Said corporation was made a party to the Harris suit, which was tried in the Western District of Arkansas on October 27, 28, and 29, 1957.

On December 31, 1957, Judge Miller filed detailed findings of fact, conclusions of law, and a full discussion of the issues before him. Harris Manufacturing Co. v. Williams, supra, D.C. 157 F. Supp. 779. On the same day he entered a judgment on the injunction phase of the case and passed for further hearing Harris' claim for an accounting and for damages.

The Court found that the venue of the Harris case was improper as to Wilson and as to the partnership, and the complaint as to them was dismissed. It was further found, however, that both Williams and Wilson had wrongfully appropriated the trade secrets of Harris and copied its machines, and both Williams

2. That agreement recited, among other things, that the parties had been served with a "paper" in the Harris case on July 3, 1957. That "paper" in all probability was the summons in the case.

and the corporate defendant were enjoined from further use of such secrets and machines. In August 1958 a supplemental opinion was filed, Harris Manufacturing Co. v. Williams, supra, D.C., 164 F.Supp. 626, and a judgment was entered awarding Harris $20,000 as compensatory damages, but denying the claim for punitive damages.

The defendant here paid the first three installments called for by the note, but made no further payments. This action was commenced on December 27, 1957, just four days before the original decision in the Harris case was rendered.

In the present action defendant admits the execution of the note, and admits that the unpaid principal balance thereof is $10,000. He contends, however, that as a result of the injunction in the Harris case he has been unable to continue in the parquet flooring business, and that the consideration for the note has on that account failed either entirely or partially. He contends further that in the negotiations leading up to the dissolution of the partnership plaintiff made certain misrepresentations and concealed material facts relative to his ownership of and right to use the Harris process, and that such alleged misrepresentations and concealment constituted a violation of plaintiff's fiduciary duty as a partner. In addition to denying liability defendant has filed a counterclaim whereby he seeks to recover the $3,000 he paid on the note.

Plaintiff, on the other hand, denies that there has been any failure of consideration, or that there was any misrepresentation or concealment in connection with the negotiations between the parties. He asserts that defendant executed his note with full notice of all pertinent facts, and that he should be required to honor his obligation.

The view that the Court takes of this case renders it unnecessary to pass upon those conflicting contentions.

 It is a settled principle of law in Arkansas that courts will not enforce illegal bargains or those that are *contra*

*bonos mores,* and that where the parties to such bargains are *in pari delicto,* the law will leave them where it finds them. Womack v. Maner, 227 Ark. 786, 301 S. W.2d 438, 60 A.L.R.2d 1271, and cases there cited. It is not necessary for the parties to raise the question of illegality. When it appears from the pleadings or the evidence that the contract in suit is tainted with illegality, the court has the right, and indeed the duty to raise the question *sua sponte.* Warner Bros. Theatres v. Cooper Foundation, 10 Cir., 189 F.2d 825; Fitzsimons v. Eagle Brewing Co., 3 Cir., 107 F.2d 712, 126 A.L.R. 681; 12 Am.Jur. Contracts, Section 223, p. 743; 17 C.J.S. Contracts § 281.

In the application of the rule that the law will not enforce an illegal contract the courts of Arkansas have refused to permit recoveries on promissory notes the consideration for which was unlawful. Smith v. Ryan, 175 Ark. 23, 298 S.W. 498; Hood v. Roleson, 125 Ark. 30, 187 S.W. 1059; Clemshire v. Boone County Bank, 53 Ark. 512, 14 S.W. 901; Ruddell v. Landers, 25 Ark. 238.

 Apart from the specific defenses tendered by the defendant, both parties in this case appear to have proceeded upon the theory that their agreement for a dissolution of the partnership accompanied by a disclosure by the plaintiff to the defendant of the Harris process was an inherently legal bargain and consonant with public policy and good morals. The Court does not share that view.

In Clemshire the defendant purchased an interest in a telephone exchange and gave his note in payment for such interest. When sued upon the note, defendant there alleged that the physical plant and properties of the exchange were worthless except for the furnishing of telephone service, and that such service could be furnished only by infringing the patents of the American Bell Telephone Company. The trial court was requested to instruct the jury that if it found that the defendant's allegations were true, the defendant would not be liable on the note.

That request was refused, and a verdict was returned in favor of the payee of the note. The Supreme Court of Arkansas reversed. In a one paragraph opinion the Court said (at page 513 of 53 Ark., at page 902 of 14 S.W.):

> "The first five declarations of law asked for by appellant were based on evidence adduced on the trial. If the facts therein hypothetically stated were true, the note sued on was without legal consideration, and void. The law should have been declared as therein asked. * * *"

Clemshire is applicable here. The obligation on the part of Williams to disclose to Wilson the secret process which had been appropriated from Harris was an integral and a vital part of the bargain. Without the bargained disclosure Williams' interest in the partnership was of no practical value to the defendant, because without knowledge of the process he could not operate.[3]

Plaintiff, of course, had no more right to disclose Harris' process to defendant than he had to appropriate the process in the first instance, and when he agreed to make the disclosure and did so he compounded the wrong that he had already done to Harris. As indicated, the agreement to disclose was the very heart of the contract between the parties and was unlawful and against public policy.

While certain parts of plaintiff's obligations under the contract were legal, standing alone, those parts are inextricably intertwined with the illegal agreement to disclose the Harris process, and for that reason the entire consideration for the note must be considered illegal and void. In Bourland v. First National Bank Building Co., 152 Ark. 139, 149, 237 S.W. 681, 684, it was said:

> "It is well settled that if any part of the entire consideration for a promise or any part of an entire promise be illegal, whether by statute or by the Constitution or from considerations of public policy, the whole contract is void. * * *

> "Where there are provisions in a contract for a compensation which is legal, still if they are blended with those which are forbidden, the whole is a unit and indivisible. The above is the language of Mr. Justice Swayne in Trist v. Child, 21 Wall. (U.S.) 441, 22 L.Ed. 623. The learned justice added that that which is bad destroys that which is good, and they perish together.

> "Where the lawful and unlawful parts of a contract cannot be separated so as to enforce the one and annul the other, it is an indivisible contract and therefore null and void throughout. Edwards v. Randle, 63 Ark. 318, 38 S.W. 343, 36 L.R.A. 174. And in that case the court quoted with approval the following:

>> " 'If any part of an indivisible promise, or any part of an indivisible consideration for a promise, is illegal, the whole is void.' "

It should be remembered that the plaintiff has already received $8,050 from the defendant, and to permit the plaintiff to recover in this case would be to allow him to recover still another $10,000 as the fruits of his theft of his employer's secrets. The Court is unwilling to countenance such a result.

Nor does the defendant stand before the Court in the robe of the innocent. On the contrary, the Court considers him just as culpable as the plaintiff. It was defendant who conceived the plan of luring Williams away from the employ of Harris for the purpose of starting a competing business. Defendant's plan at best smacks of the unethical. The Court is convinced that whether or not defendant knew that plaintiff was going to steal the Harris process, he strongly suspected that such would be

---

**3.** The written contract between the parties specifically recited that the purpose of the disclosure was to enable the defendant to carry on the business as it had been carried on prior to the dissolution.

done and expected it to be done; and when dissolution of the partnership was agreed upon, the defendant proposed to obtain the secret from the plaintiff and to carry on the unlawful operation. In the Court's opinion, the parties are *in pari delicto*, and the defendant's counterclaim should be dismissed along with the plaintiff's complaint.

It is, therefore, by the Court considered, ordered, and adjudged that the complaint be, and the same hereby is, dismissed; that the defendant's counterclaim be, and the same hereby is, dismissed; and that each party shall bear his own costs.