ALL-STATE SUPPLY, Inc. *v.* Alva Claude FISHER

5-5966                                        483 S.W. 2d 210

Opinion delivered July 3, 1972

[Rehearing denied August 28, 1972.]

*Haley, Young, Bogard & Gitchell,* for appellant.

*Bob Dawson,* for appellee.

LYLE BROWN, Justice. Appellant All-State Supply, Inc., sought to enforce the provisions of an employment contract between it and appellee, Alva Claude Fisher. That contract prohibited Fisher from accepting any employment with any competing firm for a designated period. The trial court denied relief and All-State appeals. The single point for reversal is: "The restrictions imposed in clause twelve of the parties' contract as to time and space and the sum stated as liquidated damages were reasonable and necessary for the protection of a legitimate business interest of appellant and should be enforced."

Appellant, headquartered at Little Rock, is engaged in the sale, mostly to schools, of audio-visual equipment, closed circuit television, school supplies, furniture, and other school equipment. It does a statewide business, operating through outside salesmen who make bids on school needs. The 1971 sales were approximately $900,000, most all of which were made inside the State. When appellee was employed, May 1, 1967, a salesman's contract was executed between the parties. Appellee bound himself not to engage in any business in Arkansas which would be in competition with appellant for a period of two years after termination for any reason. It was also agreed that in the event of violation of that provision the appellee would pay to All-State $500 per month as liquidated damages. In March 1971 appellee submitted his resignation and went to work for Moser Manufacturing Co., a statewide competitor of appellant. All-State unsuccessfully sought to enforce the provisions of the non-employment agreement. The court held that no trade secrets were involved, that no unusual training was afforded appellee by appellant, and that the contract was against public policy.

Paul H. Power, president of All-State, is chief executive of the corporation and the majority stockholder. Power testified that it takes time—approximately two years for a new salesman to reach his potential; that he must become acquainted with the customers and their method of buying; that it takes approximately the same period of time to really learn the merchandise; and that it takes about two years for the pricing information, which

is coded and kept confidential, to become antiquated. Power said the limitation covered the State because that is the territory in which All-State is active. The figure of $500 a month as liquidated damages, for twenty-four months, was the estimated loss that All-State would suffer during that period by the loss of an experienced salesman. He further testified that "Since Mr. Fisher (appellee) has left our employ and gone to work for Moser, Mr. Fisher has pretty well taken all of the jobs and we have not taken any job from Moser with the exception of the University Medical Center. Prior to Mr. Fisher's leaving All-State we underbid Moser on approximately fifty per cent of the jobs."

David Broyles, sales manager for appellant, related the investment made in the salesmen. They are shown the products for sale and are instructed in the demonstration of the equipment. This is done inside the office and takes a matter of days; the profit markup (coded) is explained to the new salesman; then an experienced officer with All-State goes out in the field to guide the new salesman and to introduce him to the customers. He explained the origin of the price lists: "The price lists which are furnished to us by our exclusive manufacturers for whom we are distributors are not known throughout the industry in the State of Arkansas or by our competition. They are price sheets and if our competitors knew what our prices were, they would know what to bid to beat us". As to appellee's earning capacity with All-State, the witness said appellee collected over $17,000 in commissions in 1970.

Appellee was his only witness. He conceded that when he went to work for appellant he had no previous sales experience. He also admitted that he had to have some training but insisted that it was not intensive. He was taught by factory representatives on how to operate and demonstrate various pieces of equipment. He was rather indefinite about the extent of his training. He did not deny the extent of the training as related by Paul Power. He conceded that if All-State was receiving set prices from its manufacturers as exclusive distributor and that if All-State's competitors knew those prices, it would give the competitor a decided advantage. He said that his

present employer, Moser, operated throughout the entire State and in competition with All-State. He agreed that Moser keeps their prices confidential. He admitted that when he left All-State he took the knowledge of All-State's code with him; in fact he said he took the catalog of one of All-State's exclusive suppliers, General Equipment and Supply Company. He also made this candid admission: "When I submit bids against All-State now I take into consideration to a certain extent the knowledge I learned at All-State as to their exclusive manufacturer's cost and profit rate." He also stated that he was selling for Moser in about three-fourths of the State. In his defense he testified that he could not remember all the prices in All-State's manufacturers' catalogs. He also said that periodically the costs of items change but he did not venture to estimate the time involved.

In determining the reasonableness of the restraint in a case of this nature the particular facts of each case must be examined. *McLeod* v. *Meyer,* 237 Ark. 173, 372 S.W. 2d 220 (1963). In passing on its reasonableness the most important factors are the time and the area. *Orkin Exterminating Co.* v. *Murrell,* 212 Ark. 449, 206 S.W. 2d 185 (1947). Also see *Borden, Inc.* v. *Smith,* 252 Ark. 295, 478 S.W. 2d 744, (April 10, 1972).

After carefully analyzing the abstracted testimony, the highlights of which we have recounted, we think the preponderance of the evidence shows the contract to be fair and reasonable from the standpoint of time, area and agreed liquidated damages. That conclusion is based principally upon the recited testimony of witnesses Power and Broyles, a greater portion of which is undisputed. As to the element of time, the evidence was that a salesman reaches his potential after some two years of experience and that it takes about that time for the confidential coding information to become antiquated. As to area, it is undisputed that appellant operates statewide, and appellee is covering three-fourths of the State with the merchandise of All-State's competitor. As to liquidated damages, it was testified that the monthly amount represented a fair estimate of the loss to appellant. Then to show the harm that was done appellant, it was undisputed that

since appellee joined Moser he had underbid All-State on most of the jobs wherein they competed.

Appellant is entitled to recover from appellee $500 per month, up to twenty-four months, measured by the number of those months appellee is, and was, employed by Moser.

Reversed.