IMPORT MOTORS, INC. *v.* Leon LUKER

CA 79-290                                    599 S.W. 2d 398

Opinion delivered April 23, 1980
Petition for rehearing denied May 28, 1980
Released for publication May 28, 1980

*Jacoway, Herdlinger, Jacoway & Stanley, P.A.,* by: *Thomas A. Jacoway,* for appellant.

*Davis, Douglas & Penix,* for appellee.

ERNIE E. WRIGHT, Chief Judge. The appellant, Import Motors, Inc., brings this appeal from a decree of the chancery court denying relief on appellant's complaint against appellee, Leon Luker, for specific performance, damages, injunctive relief and other incidental relief for alleged breach of a covenant not to compete in an employment contract.

For reversal appellant argues the chancellor erred in find-

ing the competition of appellee was only ordinary and the agreement of the parties did not involve a sale of business. Appellant further argues the court erred in failing to enter judgment against appellee for $250.00 he admittedly owed appellant and in failing to award injunctive relief, return of $5,000.00 compensation paid appellee as consideration for the covenant not to compete, for damages and related relief.

The appellant entered into a contract of employment for a term of one year effective April 1, 1977, for the employment of appellee as a shop manager in a newly established foreign car repair service and Fiat dealership at Springdale, Arkansas. The contract provided at the end of the one year term the ". . . agreement may be extended on a year to year basis on the terms and conditions agreed by the parties". The contract fixed appellee's salary at $20,000.00 per year, payable in the sum of $1,666.67 monthly. Prior to entering into the contract the appellee owned and operated his own foreign car repair shop in Springdale and had developed a substantial number of loyal customers. It is undisputed he was a highly skilled foreign car mechanic, and most of his established customers followed appellee to his employment with appellant and did business there.

The contract contained a covenant by appellee not to compete within two years after leaving the employment reading as follows:

> Employee agrees that during the term of this agreement and for a period of two (2) consecutive years immediately following the termination of this agreement or his employment, whichever occurs latter, and regardless of the cause of termination, he will not by himself or on behalf of any other person, firm, partnership or corporation, engage in the business of auto service and maintenance within a trade area known as Northwestern Arkansas and within a radius of twenty-five (25) miles from Springdale. Employee further agrees that he will not directly or indirectly, for himself or on behalf of, or in conjunction with, any other person, firm, partnership, or corporation, solicit or attempt to solicit the business or patronage of any person, firm,

corporation or partnership within said twenty-five (25) mile radius for the purpose of selling and/or servicing automobiles or other products similar to those dealt in by the Company. Employee shall not perform such other incidental business and service as the Company now engages in, nor will the Employee disclose to any person any of the secrets, methods or systems used by the Company in and about its business. Employee specifically agrees that $5,000.00 of his compensation is predicated upon said covenant not to compete and that the violation of said agreement shall automatically entitle the Company to reimbursement of $5,000.00 for the year of the infraction and that the Company shall also be entitled to a $100.00 per day penalty for each and every day that employee continues to violate the provisions of his covenant not to compete contained herein.

The appellee began working as shop manager in appellant's new business when the business opened in early April, 1977. He was given ten per cent of the stock in the appellant corporation, and he sold the stock to appellant prior to leaving the employment. Dissension developed between appellee and the manager, who was one of the principal corporate owners, resulting in appellee leaving the employment on February 27, 1978, some thirty-two days before the expiration of the term of the one year contract.

The manager became dissatisfied with some of the actions of appellee with reference to the discharge of his duties, and testified he discovered improprieties on the part of the appellee, specifically, " . . . in the taking of monies and not turning them over to the company"; and, " . . . letting people go without paying their bills". He further testified that when he discussed these matters with appellee, the appellee would become upset and say, "If you don't like the way I am doing things I will take my tools and go". The manager decided he could no longer permit the appellee to continue as shop manager, and on or about February 27, 1978, advised appellee he would not permit him to continue as shop manager, but would permit him to work as a mechanic. There is no indication his salary would have been reduced.

The appellee declined to work as a mechanic and left the employment. He admitted at trial he owes appellant $250.00 he received for a transmission, and no explanation was offered for not turning the money over to his employer.

The last of June, 1978, appellee opened his own business called "Leon's Foreign Car Service", a mile from appellant's business, and numerous customers discontinued patronizing appellant's business and began patronizing appellee. The evidence reflects appellant's business declined markedly after appellee opened his competing business. Prior to appellee opening the competing business the appellant was operating at a profit, but since that time the appellant has been operating at substantial losses notwithstanding an increase in new car sales. Appellant attributed these losses to the repair service competition from appellee and offered in evidence monthly gross sales receipts from the shop business reflecting substantial declines in such receipts subsequent to appellee's competition.

It is undisputed the appellee's employment involved no trade secrets or confidential information obtained by appellee while employed by appellant. Also, the evidence does not support appellant's contention there was a sale of a business.

At the close of the evidence the court granted appellant's motion to treat the pleadings as amended to conform with the proof.

The trial judge's opinion rendered after briefs were submitted made observations and findings, reading in part as follows:

> The respective briefs reflect the numerous factors to consider, including the employee's access to confidential information, special training received during employment, access by the employee to lists of customers, the employee's ability to exploit personal contacts and the goodwill purchased with a business. In the case at bar, there are admittedly no trade secrets involved. Neither are there allegations that the employee had access to any information confidential to the employer such as

lists of customers, or that the employee received any special training during employment. The contract did not arise from the sale of a business. In fact, the employer candidly states in its brief: "other factors, however, have been enumerated and the need to protect the employer from exploitation of customers is frequently cited. It is upon this basis that the petitioner has urged enforcement of its contract."

It is certainly a legitimate interest of an employer to protect the group of customers it develops from *unfairly* being drained away by a former employee. An employer may not, however, shield itself from ordinary competition.

In the instant case, the evidence reflects that Leon Luker excelled in his work as an automobile mechanic specializing in repair of foreign cars. When employed by plaintiff, he closed his automobile repair shop and many of his customers followed him to Import Motors. Upon leaving his employment with plaintiff, many of the same customers followed him to his new place of business. There is no evidence that he solicited customers to leave Import Motors. Those who followed Luker did so because they were satisfied with his prior work. Neither is there convincing evidence that the position of automobile mechanic (specializing in foreign cars) is "unique" or "extraordinary". Undoubtedly Import Motors has not found a mechanic as talented as Luker or one whose services are valued as highly. That alone does not justify a restraint of trade.

The Court has searched and cannot find any substantial evidence that Leon Luker exploited his former position with Import Motors by pirating the stock of customers developed by Import.

From a review of the evidence, we conclude the above findings of the trial judge are not contrary to the preponderance of the evidence.

We also agree the trial judge was correct in concluding,

as he did, the contract not to compete was not enforceable because it would, under the circumstances, prohibit ordinary competition, and the law does not provide protection against ordinary competition. *Orkin* v. *Weaver,* 257 Ark. 926, 521 S.W. 2d 69 (1975).

Although the pleadings were treated as amended to conform with the proof, and appellee admitted he collected and retained $250.00 that rightfully belongs to appellant, the court failed to enter judgment for appellant for that item. Judgment for the $250.00 should have been entered.

There was substantial evidence appellee breached the provision of the one year contract requiring him to promptly remit to the employer all monies of the company coming into his possession, and this resulted in his being relieved as shop foreman 32 days before the end of the term of the employment contract. The appellant, however, did not discharge appellee, but advised him he could continue in the employment as a mechanic, and there is no evidence his salary would be reduced. The contract provided he would perform such duties as the employer may from time to time direct.

There is no evidence the appellant acted other than in good faith at all times in dealing with the appellee.

The contract provides that $5,000.00 of appellee's compensation is predicated upon appellee's covenant not to compete. The pleadings were amended to conform to the proof. Since it is undisputed $5,000.00 of appellee's compensation was consideration for the covenant not to compete and that provision has been decreed to be void and unenforceable at the instance of appellee, we hold it is not equitable under the circumstances to permit the appellee to retain the $5,000.00 he received as consideration for the covenant not to compete, and appellant is entitled to recover said item. The amendment of the pleadings to conform with the proof permits the complaint to be treated as including an alternative count in assumpsit for the recovery of the $5,000.00 for which appellant received no reciprocal consideration because of appellee's election to treat the noncompetition provision in the contract as unenforceable. Under such circumstances the

law implies an obligation on the part of the appellee to return the money he received for the covenant he elected to repudiate. The appellee should not be allowed to retain the consideration for the covenant not to compete and at the same time reject the covenant.

The right to recover the $5,000.00 is on the basis of the common law action of assumpsit. Assumpsit has its origin in relief anciently afforded by chancery in respect to an implied obligation arising by operation of law, and is grounded in equitable principle. In *Hartford Accident & Indemnity Co. v. Benevento,* 133 N.J.L. 315, 44 A. 2d 97 (1945), the court said the action of assumpsit has been extended:

> To almost every case where an obligation arises from natural reasons, and the just construction of law, that is *quasi ex contractu . . .* It lies only for money, which *ex aequo et bono,* the defendant ought to refund. . . . This action is greatly favored by the courts. It is less restricted and fettered by technical rules and formalities than any other form of action. . . . It approaches nearer to a bill in equity than any other common law action.

This concept is supported by *United States v. Jefferson Elec. Mfg. Co.,* 291 U.S. 386, 54 S. Ct. 443; *Holcomb v. Kentucky Union Co.,* 262 Ky. 192, 90 S.W. 2d 25; *Beauregard v. Orleans Trust Co.,* 108 Vt. 42, 182 A. 182; and *Allen v. Mendelsohn & Co.,* 207 Ala. 537, 93 So. 416. In the latter case the court said:

> Assumpsit is an action of an equitable character, liberal in form, and greatly favored by the court as a remedy . . . no agreement is necessary; assumpsit will lie wherever the circumstances are such that the law, *ex debito justitiae* will imply a promise.

The Arkansas Supreme Court has many times recognized the common law action of assumpsit, but we find no precedent in Arkansas similar to the case before us.

While an action of assumpsit, although based on equitable principles is an action at law, the law is well settled that when the chancery court has jurisdiction of a case for one

purpose, it will retain jurisdiction to settle the rights of the parties arising out of the subject matter, *Austin* v. *Dermott Canning Co.,* 182 Ark. 1128, 34 S.W. 2d 773 (1931); *Spears* v. *Rich,* 241 Ark. 15, 405 S.W. 2d 929 (1966). Unquestionably, this action for injunctive and other relief was one cognizable in equity, and therefore, the court has jurisdiction to do complete justice as between the parties.

We review this equity case de novo on appeal, as we do equity cases generally, and direct the entry of a decree that should have been rendered by the trial court. *Ferguson* v. *Green,* 266 Ark. 556, 587 S.W. 2d 18 (1979).

The judgment is modified to award appellant recovery from appellee of $250.00 admittedly owed appellant, and the sum of $5,000.00 for monies received by appellee as consideration for the covenant not to compete.

The cause is affirmed as modified and is remanded for entry of judgment in keeping with this opinion. Appellant is awarded its costs in this court, including the cost of the record.

·Affirmed as modified.