George R. STUBBLEFIELD, Plaintiff,

v.

SILOAM SPRINGS NEWSPAPERS, INC., Defendant.

Civ. No. 83–5197.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

July 30, 1984.

solicited every retailer in Benton County and ran many advertisements for retailers in Arkansas and Oklahoma. Testimony also revealed that the plaintiff designed some brochures and inserts for certain customers.

On February 18, 1981, the defendant made, executed and delivered to the plaintiff a promissory note made jointly payable to the plaintiff and Doyle Guthrie in the amount of $52,999.92, payable in semi-annual installments of $5,888.88 each, commencing August 15, 1981. The plaintiff is entitled to a one-half interest in the payments due under the note.

As consideration for the note, the plaintiff and Doyle Guthrie executed an "Agreement for Sale and Purchase of Assets and Covenant Not to Compete" (covenant) dated February 18, 1981. The following language is included in the covenant:

1. NONCOMPETITION: Covenantors covenant and agree that they will not compete, either directly or indirectly, with Siloam Springs Newspapers in Benton County, State of Arkansas in a business similar to that herein sold to Siloam Springs Newspapers, including, but not limited to the publication, circulation or distribution of newspapers, shoppers or other similar printed matter, ... or to lend to or participate in the activity of management, partnership, operation or control of or be connected with any person, firm, corporation or other legal entity engaged in any of the foregoing activities for a period of ten (10) years from the date hereof in Benton County, State of Arkansas.

(2) EXTENT: This Covenant Not to Compete shall extend to direct or indirect competition, including, without limitation, competition as an employee, owner, partner, stockholder in a closely-held business corporation, officer, director, consultant for hire or otherwise, in any form whatsoever. Covenantors shall not canvass, solicit or accept any publication business during the term of this Cove-

Thomas Tucker, Siloam Springs, Ark., and Phil Thompson, Jay, Okl., for plaintiff.

John R. Eldridge, III, Burke & Eldridge, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This is a suit on a promissory note brought by the plaintiff, a resident of Oklahoma, against the defendant, an Arkansas corporation with its principal place of business in Siloam Springs, Arkansas. This suit was originally brought in the Circuit Court of Benton County, Arkansas, and later removed on petition by the defendant to this court where it was tried without a jury. This memorandum opinion incorporates the court's findings of fact and conclusions of law.

The plaintiff and his partner, Doyle Guthrie, each owned an undivided one-half interest in the Siloam Springs Shopper which circulated in Benton County, Arkansas, and Adair County, Oklahoma. The plaintiff testified that during the time he operated the Siloam Springs Shopper he

nant from any present or past clients of The Siloam Springs Shopper.

The covenant went on to prohibit the disclosure of any confidential information such as lists of advertisers of The Siloam Springs Shopper or other documents related to the financial affairs of the business.

In June, 1981, the plaintiff became employed by Grove Sun Newspaper Company, Inc., and participated in the production and publication of *The Grove Sun* newspaper. *The Grove Sun* is published in Grove, Oklahoma, and circulates in the surrounding area including portions of Benton County, Arkansas. *The Grove Sun*, during the term of the plaintiff's employment with it, solicited and accepted contract printing jobs and work from persons, firms and corporations located in Benton County, Arkansas.

The plaintiff personally solicited contract printing work from the Walter Gray Agency at locations in Benton County, Arkansas, and personally worked on Walter Gray inserts while employed by Grove Sun Newspapers Co., Inc. The plaintiff had also worked on such inserts prior to the execution of the covenant. Furthermore, the plaintiff solicited and obtained advertising business from Decatur Discount Store in Benton County, and from Pioneer Mobile Homes in the state of Arkansas.

In response to the plaintiff's acts which the defendant alleges constitute a breach of the covenant, the defendant repudiates any further obligation owing on its part. This suit is for collection on the note.

The primary issue in this case is whether the Covenant Not to Compete involved in the contract is void as against public policy. A collateral issue raised in this case is whether the court may, *sua sponte*, determine whether the questioned covenant is void as against public policy.

The parties involved in this case are suing on the contract seeking remedies for its breach and are not challenging the validity of the Covenant Not to Compete. Thus, the first issue which must be addressed is whether the court may, on its own motion, examine the covenant and elicit testimony to determine its validity.

In our society freedom to contract is a fundamental principle which the law safeguards and preserves, but contractual freedom is not unlimited. In some situations the right to contract freely must be restrained in order to promote the good of the public. Because competition is an essential and very beneficial element in our capitalistic system, the law prohibits, both by statute [1] and by case law, contracts and agreements which unreasonably inhibit competition. Such is the case with unreasonable covenants not to compete which are void as against public policy.[2]

Included among the duties of the judiciary is the duty to protect the interests of the public which in the case at bar includes determining whether the Covenant Not to Compete is contrary to the public policy in favor of competition and thereby void. Clearly the court, *sua sponte*, may examine the covenant and accordingly question witnesses about facts pertinent to the covenant; otherwise the interests of the public would be subjugated to the interests of the individual parties. The applicability of public policy considerations cannot depend on the whim and caprice of individual parties to a lawsuit, but must be assured by the judiciary serving as the guardian of the interests of the public.

As Judge J. Smith Henley so aptly stated in *Williams v. Wilson*, 181 F.Supp. 351, 354 (W.D.Ark.1960), "[i]t is not necessary for the parties to raise the question of illegality. When it appears from the pleadings or the evidence that the contract in suit is tainted with illegality, the court has the right, and indeed the duty to raise the question *sua sponte*. *Warner Bros. The-*

---

1. See the Sherman Anti-Trust Act and the Robinson-Patman Act.

2. *See Rebsamen Ins. v. Milton*, 269 Ark. 737, 745, 600 S.W.2d 441 (App.1980); *Import Motors v. Luker*, 268 Ark. 1045, 1051, 599 S.W.2d 398 (App.1980); and *Williams v. Wilson*, 181 F.Supp. 351, 355 (W.D.Ark.1960).

aters v. Cooper Foundation, 10 Cir.1951, 189 F.2d 825; Fitzsimons v. Eagle Brewing Co. 3 Cir.1939, 107 F.2d 712, 126 A.L.R. 681; 12 Am.Jur.Contracts, Section 223, p. 743; 17 C.J.S. Contracts § 281." Thus, the court may, in the case at bar, determine whether the Covenant Not to Compete included in the contract for the sale of the Siloam Springs Shopper is void as against public policy.

■ Considerable litigation has occurred in Arkansas concerning covenants not to compete and as a general rule the validity of a covenant not to compete depends on individual facts and circumstances and whether the restraint on trade is reasonable. See Rebsamen Ins. v. Milton, 269 Ark. 737, 600 S.W.2d 441 (App.1980). The three factors most important in determining reasonableness are: (1) the time restriction of the covenant; (2) the geographical scope of the covenant; and (3) the protectible interest of the employer or purchaser. In addition, the reasonableness of a covenant depends upon the nature of the agreement. Covenants incidental to the sale of a business are viewed with more liberality than covenants incidental to an employment relationship. See Madison Bank and Trust v. First National Bank of Huntsville, 276 Ark. 405, 635 S.W.2d 268 (1982), and Import Motors v. Luker, 268 Ark. 1045, 599 S.W.2d 398 (App.1980). In properly analyzing a covenant not to compete each of the factors must be individually examined to determine whether the covenant constitutes an unreasonable restraint of trade.

■ In a number of Arkansas cases the reasonableness of the duration of covenants not to compete has been addressed. It is clear that the reasonableness of the time restraint varies according to whether the covenant is part of an employment contract or part of a contract for the sale of a business.

■ The Arkansas cases indicate that the maximum time allowed for covenants not to compete incidental to an employment contract is about three years. In Borden

v. Huey, 261 Ark. 313, 315, 547 S.W.2d 760 (1977), the Arkansas Supreme Court stated that a "one-year limitation presents a closer question, but we think it too to be reasonable." Similarly in AllState Supply Inc. v. Fisher, 252 Ark. 962, 483 S.W.2d 210 (1972), the court, construing a two-year covenant not to compete, found the time element of the covenant to be reasonable in light of the fact that "a salesman reaches his potential after some two years of experience and ... it takes about that time for the confidential coding information to become antiquated." See 252 Ark. at 965, 483 S.W.2d 210. In Rector-Phillips-Morse v. Vroman, 253 Ark. 750, 489 S.W.2d 1 (1973), the court found a three-year covenant not to compete imposed on a real estate salesperson to be unreasonably long. Another three-year restriction led the court to void a covenant in Miller v. Fairfield Bay, 247 Ark. 565, 446 S.W.2d 660 (1969). An invalidation of a five-year covenant not to compete was handily affirmed by the Arkansas Supreme Court in United Insurance Agency v. Martin, 258 Ark. 916, 529 S.W.2d 871 (1975).

Although the reasonableness of a covenant not to compete must be determined in light of the particular facts of each case, McLeod v. Meyer, 237 Ark. 173, 372 S.W.2d 220 (1963), the cases previously cited strongly indicate that covenants contained in employment contracts which restrict competition for more than two years are highly suspect and are generally void as against public policy. If the ten-year covenant in the case at bar was part of an ordinary employment contract, it would obviously be an unreasonable restraint of trade and void. This case is complicated by the fact that it not only concerns the employment of the plaintiff, but is also a part of the sale of a business. Therefore, in determining whether the ten-year duration of the covenant is reasonable, a survey of the cases concerning covenants not to compete incidental to the sale of a business must be considered.

In 1909 a five-year covenant not to compete related to the sale of an insurance agency was considered reasonable. See

*Bloom v. Home Insurance Agency,* 91 Ark. 367, 121 S.W. 293, 297 (1909). Later in 1927 a 20-year covenant not to compete related to the sale of a gin was upheld in *Robbins v. Plant,* 174 Ark. 639, 297 S.W. 1027 (1927). Recently in *Madison Bank and Trust v. First National Bank of Huntsville,* 276 Ark. 405, 635 S.W.2d 268 (1982), the Arkansas Supreme Court thoroughly addressed the law in relation to covenants not to compete involved in the sale of a business.

In *Madison Bank,* the appellant, after approximately one year of negotiations, bought substantially all of the outstanding shares of the Bank of Kingston for a cash purchase price of more than $500,000.00. The contract consummating the purchase included a covenant not to compete which had a time duration of ten years and a geographic radius of ten highway miles. The court noted that the general rule is that, in order to be reasonable, the territory included in the covenant must be necessary for the protection of the promisee's interest. The court went on to find the ten-mile restriction and the ten-year duration reasonable. Justifying its liberality, the court said, "[O]wing to the possibility that a person may be deprived of his livelihood the courts are less disposed to uphold restraints in contracts of employment than to uphold them in contracts of sale." *Citing Little Rock Towel and Linen Supply Co. v. Independent Linen Service Co. of Arkansas,* 237 Ark. 877, 377 S.W.2d 34 (1964).

The *Madison Bank* case is rather limited to its own facts because it so purely involved the sale of a business and because of the obvious arms-length characteristics involved in the negotiations leading up to the formation of the contract. These peculiar facts were emphasized by Justice Hickman in his dissent: "I expect the majority may be deeply influenced in its judgment by the fact that the appellants were knowledgeable, well informed businessmen who should have known what they were signing when they made and entered into the written agreement, and should not readily be able to break it." *See* 276 Ark. at 413, 635 S.W.2d 268.

The ten-year duration approved in *Madison Bank* is certainly not conclusive precedential authority in this case and, indeed, because of the factual differences between the case at bar and *Madison Bank,* is not even strong persuasive authority. This case is not so purely a sale of a business transaction; it also gravely concerns the only means of livelihood known to the plaintiff, Rick Stubblefield. The negotiations antecedent to the execution of the covenant do not enjoy the same arms-length characteristics as did the negotiations in *Madison Bank.* Additionally, the ten-year duration of the *Madison Bank* covenant was accompanied by a mere ten-mile radius geographic limitation. Not only is the duration requirement in the case at bar ten years, but the geographic limitation is much more than ten miles. Because of these differences, the court finds that *Madison Bank and Trust v. First National Bank of Huntsville* simply does not compel the approval of the covenant involved in the case at bar.

The ten-year duration of the covenant in this case is unreasonably long. It is designed to protect Siloam Springs Newspaper, Inc., from competition by the plaintiff, Mr. Stubblefield, but the protectible interest involved is the good will enjoyed by Mr. Stubblefield and generally good will resulting from the operation of a "shopper" does not remain viable for ten years. That is especially true in this case in which the shopper itself had only been in business a few years.

The duration of the covenant alone may provide sufficient reason for declaring the covenant void, but the court need not rest its decision solely on this element. It is also clear from the language of the covenant that the geographic scope of the covenant is unreasonably broad. The covenant essentially prohibits Mr. Stubblefield from competing directly or indirectly with Siloam Springs Newspapers in Benton County, Arkansas. This provision virtually prohibits Mr. Stubblefield from becoming involved in

any way with any publication which might either distribute its periodical in Benton County or solicit advertising customers in Benton County or even print material for businesses in Benton County. The testimony of various individuals points out that periodicals from Fort Smith, Arkansas, Little Rock, Arkansas, Tulsa, Oklahoma, Joplin, Missouri, and even New York, New York, are distributed in Benton County and to some extent compete with Siloam Spring Newspapers, Inc. Thus the geographic scope of the covenant is extremely broad and is obviously unreasonable.

The various geographic scopes of the covenants not to compete considered in prior Arkansas cases fall far short of the scope of this covenant. *See Borden Inc. v. Smith,* 252 Ark. 295, 478 S.W.2d 744 (1972), where the Arkansas Supreme Court held "without hesitation" that the covenant not to compete which prohibited employees of Borden from competing with Borden in 63 of Arkansas' 75 counties was void as an unreasonable restraint of trade.

The combined effect of the duration and the geographic scope of the covenant unreasonably restrains trade and fetters the livelihood of the plaintiff to such a degree that the court is compelled to find the covenant void as against public policy.

Because the decision in this case is founded on the preceding discussion concerning the scope and duration of the covenant, the third element, the protectible interest of the employer or purchaser, warrants little discussion. It is clear that some protectible interests were involved here. Customer lists, good will, and other confidential information were valid concerns which played a part in the formation of the covenant. These support the assertion that the covenant should be liberally construed, but this covenant also contains employment contract characteristics which support strict construction. Mr. Stubblefield's sole expertise in life is based in the printing and advertising business. To preclude him from doing that kind of work not only precludes him from opening a competing business, but also bars him from engaging in the only trade for which he is qualified and essentially prevents him from pursuing his means of livelihood in any area in which his training would be of significant benefit to him. Thus while some indicia of a sale of a business type covenant is found in the existence of confidential information, some employment characteristics are also present and because these factors equiponderate each other, the decision remains the same. In fact, even if this contract was a pure business sale transaction, it would be void because of the combined effect of the duration and geographic scope and the unreasonable restraint on trade which results.

■■■■ Having voided the contract, the court must determine what remedy should be employed. There are cases which would leave the parties as they are found, *Williams v. Wilson,* 181 F.Supp. 351 (1960), but it is inequitable to declare the covenant void and unenforceable and simultaneously allow the plaintiff to retain the consideration he received for the covenant. *See Import Motors v. Luker, supra.* Under the common law of assumpsit the plaintiff has a duty to return the money which he ought to refund. Assumpsit lies in cases where money is had and received without a corresponding or mutual obligation or forebearance. Thus, the plaintiff should return the money which he was paid after he began working for the *Grove Sun* because this is when the covenant was first disregarded and that was the initial failure of a corresponding or mutual obligation or forebearance.

Accordingly, the plaintiff is required to reimburse the defendant for all amounts paid to the plaintiff less one-thirtieth (1/30) of the total consideration for the covenant which represents the time that the plaintiff abided by the terms of the covenant. In this case, equitable principles favor such action even more than they did in *Luker* because the defendant has paid for good will and a going concern value which cannot be realized if the covenant is void. Only by ordering a return of the amounts already paid can equity be accomplished.

A separate judgment in accordance with this memorandum opinion will be concurrently entered.